Kenneth NIXON, Appellant,

v.

The STATE of Texas, Appellee.

No. 57700.

Court of Criminal Appeals of Texas, Panel No. 3.

Sept. 19, 1979.

Rehearing En Banc Denied Oct. 31, 1979.

Randy Martin, Houston, for appellant.

Carol S. Vance, Dist. Atty., Alvin M. Titus and R. P. Cornelius, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

Before ODOM, PHILLIPS and W. C. DAVIS, JJ.

OPINION

ODOM, Judge.

This is an appeal from a conviction for murder. Punishment was assessed at twenty years.

In his third ground of error appellant complains of the exclusion of his own testimony about the conversation he had with his wife at the time she was shot.

Appellant and his wife were having marital difficulties, and he discovered she was seeing Larry Gibson. On the afternoon of the shooting appellant came home and confronted his wife with evidence of her affair with Gibson. He had testified to the beginning of their conversation on that afternoon when this point was reached in his direct examination:

"Q. And what did you tell her, then, Kenneth?

"A. Well, I—I told her that Gibson was a child molester; that I couldn't give her more time to think; I didn't want him at my house; I didn't want him around my kids.

"MR. CORNELIUS: We're going to object to that statement, Your Honor, because it's based on hearsay.

"THE COURT: Sustained.

"MR. CORNELIUS: We ask—

"THE COURT: The jury will not consider the last statement by the defendant for any purpose whatsoever, ladies and gentlemen.

"MR. CORNELIUS: We further ask that it be stricken from the record.

"THE COURT: Very well. It will be stricken from the record."

After appellant's direct and cross-examination was completed before the jury, a more complete bill was made outside the hearing of the jury on this and other matters, and counsel stated his position for the court:

"Q. What did you tell her [his wife]?

"A. I told her about his [Gibson's] record. I don't believe she believed me or what have you. However, like I say, when I told her that I would get the children and that they _ _ _ I didn't think that a divorce court or probation department would allow a child molester to have my child, well, that's when she became hysterical.

"*  *  *

"MR. MOORE [defense counsel]: Your Honor, the additional thing—and I'm not sure if it's in or out—we wanted to offer was this Nixon statement to Mrs. Nixon to the effect that 'I'm going to get a

divorce and seek custody of the children, because I don't want them around a child molester.' Now, this would be the defendant's—make a separate tender only as to that statement, which we maintain precipitated her activities and anger to the effect that it's been asked, and I'm not sure whether it's before the jury or not. But, at any rate, we would now tender it and ask the Court to allow us to ask him that very question and elicit that response.

"* * *

"MR. MARTIN [also defense counsel]: Further, the statements by Mr. Nixon—the phone call and the statement to Mrs. Nixon—are a fact and circumstance surrounding the killing, which is admissible under 19.06. And if the State wants to argue that these statements are not true, if they want to argue that Mr. Nixon has made all this up after the fact, that is a jury argument; that goes to the weight to be given the evidence or the testimony, but not to the question of its admissibility. And we feel that those statements are not hearsay and that they're therefore admissible on that basis.

"THE COURT: All right; Mr. Cornelius?

"MR. CORNELIUS: We have the same objections we had at the time of the trial, Your Honor, which were sustained by the Court; that it is hearsay and improper.

"THE COURT: Well, same ruling, Mr. Martin."

V.T.C.A., Penal Code Section 19.06, relied on by appellant at trial and on appeal, provides:

"In all prosecutions for murder or voluntary manslaughter, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense."

It is established that this statute does not change the general rules of evidence regarding hearsay. *Erwin v. State,* 531 S.W.2d 337; *Fazzino v. State,* 531 S.W.2d 818. It is also well established, however, that statements offered for the purpose of showing what was said, and not for the truth of the matter stated, do not constitute hearsay. *Gholson v. State,* 542 S.W.2d 395; *Rich v. State,* 510 S.W.2d 596; *Arnott v. State,* 498 S.W.2d 166. The State's position that the evidence was hearsay is without merit.

Evidence of words spoken during the events surrounding a killing, such as the evidence excluded here, constitutes part of the "circumstances surrounding the killing" under Sec. 19.06, supra. Furthermore, apart from the express rule of Sec. 19.06, the general rule is that an offense does not occur in a vacuum and it is proper to admit evidence of the surrounding facts. *Nelson v. State,* 511 S.W.2d 18. We conclude that the trial court reversibly erred by excluding the offered testimony.

The judgment is reversed and the cause remanded.