**Kenneth Edmond SAUNDERS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–83–00816–CR.**

Court of Appeals of Texas, Dallas.

Feb. 1, 1985.

Dissenting Opinion Feb. 4, 1985.

Rehearing Denied March 19, 1985.

Kerry P. Fitzgerald, Dallas, for appellant.

Dennis E. Guffey, Asst. Dist. Atty., Dallas, for appellee.

Before STEPHENS, VANCE and GUILLOT, JJ.

VANCE, Justice.

Appeal is from a conviction for murder. The jury assessed punishment at thirty years confinement in the Texas Department of Corrections. Appellant presents fifteen grounds of error. The sufficiency of the evidence is not challenged. We will address only ground of error one, in which appellant contends that the trial court erred in excluding mitigatory evidence offered during the punishment phase of the trial, which is dispositive of the appeal. Accordingly, we reverse and remand.

During the guilt-innocence phase, the State's evidence reflected that appellant and a companion, Shoemaker, gained illegal entry into the deceased's house. The deceased's brother subsequently heard a voice from the deceased's bedroom ask, "Where is the money?" The deceased answered that he did not have it. The brother then heard the deceased shout, "No, man," and a gunshot. Appellant offered no evidence during the guilt-innocence phase; however, after the jury found him guilty of murder, appellant took the stand and attempted to recite his version of the shooting. Appellant testified that he and Shoemaker went to the deceased's home to recover their money from an unsuccessful drug deal. Appellant stated that they gained entry through a side door of the house, and walked into the deceased's bedroom, where they awoke him. Appellant then testified:

[Defense Counsel] Q. Did you have the gun?

A. Yes, sir, I did.

Q. Where was John Shoemaker?

A. He was to my right.

Q. Tell us what you said to him [the deceased], Kenny.

A. I asked him where my money was and then that we wanted it back.

Q. Were you trying to scare him?

A. Yes, I was.

Q. *What did he say?*

A. *He said he didn't know where my money was and that if I had a gun, I might better use it, and from there he stood up and grabbed my arm.*

[Prosecutor]: We will object to him going into defensive matters now.

The Court: I didn't hear the last thing he said. Read the response back.

(Whereupon, the requested testimony was read back by the Court Reporter.)

The Court: I am going to carry your objection. I am going to let him finish what he was saying and then I will rule on it.

[Defense Counsel] Q. Kenny, what did you do when he did that?

A. I pulled back, and as I pulled back the gun discharged.

The Court: I am going to sustain the objection.

[Prosecutor]: And I would ask that the jury be instructed to disregard all of that last question.

The Court: I am going to sustain the objection. The jury is instructed to disregard the Defendant's last answer. [Emphasis added].

TEX.CODE CRIM.PROC. art. 37.07(3)(a) (Vernon 1981) addresses the character of evidence heard in the punishment phase of the trial:

[E]vidence may be offered by the state and the defendant as to the prior criminal record of the defendant, his general reputation and his character.

In *Allaben v. State,* 418 S.W.2d 517, 519 (Tex.Crim.App.1967), the Court of Criminal Appeals explained article 37.07(3)(a) as follows:

Evidence to be offered at the hearing on punishment ... is by no means limited to the defendant's prior criminal record, his

general reputation and his character. Evidence legally admissible to *mitigate punishment* or evidence that is relevant to the application for probation, if any, is also admissible. [Emphasis added].

TEX.PENAL CODE ANN. § 19.06 (Vernon 1974) specifically addresses the type of evidence admissible in all prosecutions for murder or voluntary manslaughter:

[T]he state or the defendant shall be permitted to offer testimony as to *all relevant facts and circumstances surrounding the killing* and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense. [Emphasis added].

Appellant, relying predominently on *Brazile v. State*, 497 S.W.2d 302, 304 (Tex. Crim.App.1973), asserts that the testimony was admissible in mitigation of punishment as it contained "facts and circumstances surrounding the killing," and that its exclusion constitutes reversible error. The defendant in *Brazile* appealed his murder conviction, similarly arguing that notwithstanding his failure to present evidence at the guilt-innocence phase, he was entitled at the punishment phase to recite his version of the facts and circumstances surrounding the homicide. Brazile's bill of exception reflected he would have testified that:

[H]e and the deceased got into an altercation outside a cafe, that the deceased started to pull a gun on him, and appellant grabbed it and took it away from him. Appellant went inside the cafe and sat down. The deceased entered the cafe, and appellant got up and started out. Appellant then shot him....

497 S.W.2d at 302. Relying on former TEX. PENAL CODE ANN. art. 1257a (repealed 1973)[1] and article 37.07 § 3(a), the court in *Brazile* held that the evidence would have served to mitigate punishment, and that its exclusion constituted reversible error.

The State, relying on the rule that evidence of affirmative defenses which would exonerate the defendant may not be admitted at the punishment stage of the trial, endeavors to distinguish *Brazile* on that basis. *See Nixon v. State*, 572 S.W.2d 699, 701 (Tex.Crim.App.1978). The State points out that in *Brazile* there was no testimony at all allowed at the punishment stage from the defendant as to the circumstances surrounding the shooting, and that the excluded testimony contained no defensive matters. In contrast, the State argues that here appellant was allowed to testify to other facts and circumstances surrounding the incident, and was only restricted from asserting defensive matters, which were not admissible. The State also maintains that any potential error was rendered harmless when appellant subsequently testified to "the necessary essentials of the situation—that unprovoked, [a]ppellant shot the decedent." The State points to the following testimony:

[Defense Counsel] Q: Mr. Saunders ... [d]id you pull that trigger?

[Appellant] A: Yes, sir, I did.

Q: Okay. Did the gun go off?

A: Yes, sir, it did.

  *   *   *   *   *   *

Q: That is not what happened. It wasn't an accident, was it?

A: I know, but it was freak on my part, being involved in anything like that, and the fact of what happened....

The State contends that if the excluded testimony was *not* defensive in nature, then it said nothing not said in later testimony, and thus no error is shown.

■ We are not persuaded by the State's attempts to distinguish *Brazile*. Both *Brazile* and its progeny, *Marrero v. State*, 500 S.W.2d 818, 820 (Tex.Crim.App. 1973), were reversed for the exclusion of mitigatory evidence concerning lack of malice at the punishment stage, the rationale being that malice was relevant only with respect to punishment, and thus that was

1. Article 1257a was replaced by TEX. PENAL   CODE ANN. § 19.06.

the "proper stage" to introduce such testimony. In the instant case, appellant was charged with murder under TEX. PENAL CODE § 19.02(a)(1) (Vernon 1974). As in *Brazile,* malice is not an element of that offense, and the presence or absence of malice related only to punishment. Contrary to the State's argument, the excluded testimony was not an attempt to raise a defensive theory that the shooting was an accident or was in self-defense. Appellant later testified that he pulled the trigger, and that it was no accident.

Rather, we conclude that the excluded testimony was meant to show that the killing was not done with malice, but accomplished during an assault and after the deceased grabbed at appellant. The proffered testimony constituted part of the "circumstances surrounding the killing" under section 19.06, and was proper evidence in mitigation of appellant's punishment. Furthermore, apart from the express rule of section 19.06, the general rule is that an offense does not occur in a vacuum, and all of the evidence of the surrounding facts may be properly admitted. *Nixon v. State,* 587 S.W.2d 709, 711 (Tex.Crim.App.1979). Additionally, although appellant was permitted to testify to other facts and circumstances surrounding the shooting, section 19.06 provides that *"all* relevant facts and circumstances surrounding the killing" shall be permitted. (Emphasis added). We therefore hold that the trial court erred by excluding the offered testimony, and that the error was not rendered harmless by the subsequent testimony of appellant to various other facts and circumstances surrounding the shooting.

The State further maintains that even if the excluded testimony concerned mitigating circumstances, it was inadmissible hearsay. Although no hearsay objection was made by the State, the State relies on the rule that when a trial court's ruling on the admission of evidence is correct, although given for a wrong or insufficient reason, it will not result in reversal. *See Miles v. State,* 488 S.W.2d 790, 792 (Tex. Crim.App.1972).

It is well established that section 19.06 does not change the general rules of evidence regarding hearsay. *Nixon,* 587 S.W.2d at 711. It is also well established, however, that statements offered for the purpose of showing what was said, and not for the truth of the matter stated, do not constitute hearsay. *Nixon,* 587 S.W.2d at 711—(reversed for exclusion of appellant's testimony concerning the conversation he had with his wife at the time she was shot). We conclude that evidence of the words spoken during the events surrounding the killing was not offered to prove the matters asserted, but rather as proof that the statement was made. The statement was explanatory of the circumstances surrounding the shooting, and enabled the jury to realistically evaluate the evidence. *See also Rojas v. State,* 622 S.W.2d 466, 468–469 (Tex.App.—Corpus Christi 1983, pet. ref'd) and *Calamaco v. State,* 650 S.W.2d 913, 916–917 (Tex.App.—San Antonio 1983, pet. ref'd).

Finally, the State argues that appellant failed to show that the "rejected evidence was of a character calculated materially to change the state of the case favorably to the accused," one standard to be followed in reviewing the exclusion of evidence. *Ewalt v. State,* 363 S.W.2d 279, 283–284 (Tex.Crim.App.1963). In light of the fact that appellant, who was eligible for probation, received a 30 year sentence out of a possible 99 years or life, we decline to hold that the error was harmless. *Brazile,* 497 S.W.2d at 304. Appellant's first ground of error is sustained.

The judgment is reversed and remanded.

GUILLOT, J., dissents.

GUILLOT, Justice, dissenting.

I respectfully dissent and, while I find the law in the area of what is admissible in the punishment phase of the trial to be clouded at best, I would hold that there was no error in refusing the proffered testimony.

Admitting that his testimony raises no legal defense to the charge of murder, *Davis v. State*, 597 S.W.2d 358, 360 (Tex.Crim. App.) (en banc), *cert. denied*, 449 U.S. 976, 101 S.Ct. 388, 66 L.Ed.2d 238 (1980), appellant argues that, because the evidence is not admissible for defense of the charge, it was offered to mitigate punishment. Appellant characterizes his testimony as evidence that the homicide occurred during an assault. We are not bound, however, by appellant's characterization of the testimony.

What appellant attempted to do at the punishment phase was to testify to his version of the facts. At that point, his version is irrelevant and inadmissible. *White v. State*, 444 S.W.2d 921 (Tex.Crim. App.1969). Viewed in context, there is no reasonable interpretation of appellant's testimony other than that he accidentally pulled the trigger. But evidence of the affirmative defense of accident which would exonerate appellant is not admissible at the punishment phase of the trial. *Nixon v. State*, 572 S.W.2d 699 (Tex.Crim.App. 1978).

Furthermore, pulling the trigger cannot be an accident legally sufficient to exonerate appellant. *Sargent v. State*, 518 S.W.2d 807 (Tex.Crim.App.1975). Moreover, because there is no evidence to show that appellant used force to protect himself against the deceased's "use or attempted use of unlawful force," TEX. PENAL CODE ANN. § 9.31 (Vernon 1974), it cannot be self-defense. Hence, his testimony is inadmissible. I would affirm.