**Joe Truman SALLINGS, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 05–89–00234–CR.

Court of Appeals of Texas,
Dallas.

May 2, 1990.

Tena M. Hollingsworth, Dallas, for appellant.

Yolanda M. Joosten, Dallas, for appellee.

Before WHITTINGTON, BAKER and BURNETT, JJ.

## OPINION

BAKER, Justice.

A jury convicted appellant of aggravated sexual assault and assessed a life sentence and a $10,000 fine. In seventeen points of error, appellant complains that there was a fatal variance between the indictment and evidence; the evidence was sufficient to show that he was clearly incompetent to stand trial; and that the trial court erred in: (1) overruling his motions to quash; (2) admitting into evidence appellant's confession, items found pursuant to his confession, his arrest warrant, and items recovered as a result of a search of his home; (3) refusing to allow him to cross-examine the complainant as to her true name; (4) failing to grant his motions for mistrial because of alleged prosecutorial misconduct and improper argument; (5) refusing to allow into evidence impeaching testimony; and (6) allowing a witness to testify who had violated "The Witness Rule." These points are without merit. We affirm the trial court's judgment.

The eighty-one-year-old complainant testified that her name was M___ K___ B___ but that she was using the name Jane Doe for the purposes of the trial. She said that she awoke at 11:00 p.m. on December 25, 1987, to find a man beside her bed. He got into bed with her, struck her repeatedly, breaking her cheek bone and nose, sexually assaulted her, and robbed her. She recognized the man as a neighbor, Joe ("Jody")

Truman Sallings, who had done work for her on her home.

## COMPETENCY HEARING

 In his sixteenth point of error, appellant contends that "the jury's verdict which found the defendant competent to stand trial is contrary to the overwhelming weight of the evidence presented during the competency hearing." The test for competency is whether the accused has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether the accused has a rational as well as a factual understanding of the proceedings against him. *Ex parte Locklin*, 583 S.W.2d 787, 789 (Tex.Crim.App.1979); TEX.CODE CRIM.PROC. ANN. art. 46.02(1)(a) (Vernon 1979).[1] A defendant is presumed competent to stand trial unless he proves his incompetency by a preponderance of the evidence. Code art. 46.02(1)(b). A court reviewing the sufficiency of the evidence to support a competency finding must determine whether, after considering all evidence bearing on competency, the judgment is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Meraz v. State*, 785 S.W.2d 146, 155 (Tex.Crim.App. 1990).

 The record reflects that in February 1989, a competency hearing was conducted before a jury. The State called Dr. James P. Grigson, a psychiatrist. He testified that he examined appellant on October 4, 1988, and again on January 25, 1989. He said appellant comprehended the charges and related the facts of the case. He said appellant gave very knowledgeable answers regarding the functions of the judge, the jury, and the district attorney, and he understood about plea bargaining. In his opinion, appellant had sufficient present mental ability to consult with his attorney with a reasonable degree of rational understanding, that he had a rational as well as factual understanding regarding the proceedings against him, and that he was com-

petent to stand trial. Grigson testified that, in his opinion, appellant was competent and understood what he was charged with, the facts of the offense, and his involvement in it. Appellant was able to give a detailed written statement to the police explaining how he had committed the offense. Appellant was also able to give his personal history to all the health care professionals who examined him. He was cooperative and answered their questions.

Dr. Clay Griffith, a psychiatrist called by appellant, testified that he first examined appellant on December 2, 1988, and again on January 10, 1989. The purpose of the examination was to determine if appellant was competent to stand trial. Griffith said he did a mental status examination, a type of exam that is used by psychiatrists when examining someone for the first time or if it has been some time since the person was last examined. It is a verbal type of examination and requires cooperation of the individual. He explained that the examination and observations are designed to give the examiner the opportunity to detect whether somebody is trying to deceive the examiner.

He testified that appellant is a thirty-one year old man who tried to cooperate with him to the best of his "very limited" ability. He said his mood was variable, from being very blunt to being "flat." Appellant's emotional reactions were also flat during the interview, referring to how appellant said things and how he reacted to certain things. He testified that appellant's production of thought was adequate if you "gave him time," that he stuttered somewhat, and that he had much difficulty in completing sentences or thoughts. Griffith said that when appellant started talking about how he was at the time of the offense, he did not make any sense, he rambled, and his conversation was disjointed. Griffith said appellant was functioning "considerably below average on an intellectual level" and that there were many signs of organic problems or some kind of brain

---

1. All future references to the Code are to the Texas Code of Criminal Procedure Annotated (Vernon 1979) unless otherwise noted.

damage. He expressed the opinion that appellant was incompetent to stand trial.

Griffith testified that while appellant was intellectually below average, he was not retarded and had adequate thought production if given enough time. Although Griffith testified that he thought appellant was incompetent, Griffith also testified that appellant told him that he was at his brother's house when he was arrested and that he knew what he was charged with and when he was placed in jail. Griffith obtained appellant's personal history, including appellant's place of birth, education, details of his abuse as a child, and information that appellant had never been in a psychiatric hospital.

Appellant next called Dr. Carolyn Mitchell, a clinical psychologist, who examined appellant on March 31, 1988. She said that he was cooperative and that he answered all of her questions. She gave him a Minnesota Multi–Phasic Personality Inventory, a psychological test. Her initial findings were that appellant had some neurological or organic impairment. She said that in her opinion appellant was not competent to consult with his attorney with a reasonable degree of rational understanding. Mitchell testified that although she thought appellant was incompetent, appellant was able to answer a true or false test and understood the crime for which he was accused.

Next, the defense called King Solomon, an attorney who was originally appointed to represent appellant in the trial court. After consulting with appellant, Solomon requested a mental examination of appellant. He testified that, in his opinion, appellant did not have sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding.

■ The credibility of any and all witnesses is for the fact finder. *Coe v. State*, 683 S.W.2d 431, 438 (Tex.Crim.App.1984). The fact finder is free to believe or not believe any portion or all of a witness's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim.App.1986), *cert. denied*, — U.S. ——, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988). After considering all the evidence on competency, we hold that the jury's finding is not so against the great weight and preponderance of the evidence as to be manifestly unjust. *Meraz*, 785 S.W.2d at 155. Appellant's sixteenth point of error is overruled.

## PRETRIAL MOTIONS

■ In points of error one through four, appellant contends that the trial court erred in overruling his motion to quash the indictment. Under his first point, appellant argues that he was denied due process and did not have proper notice of the charges against him because the complainant was identified in the indictment under the pseudonym "Jane Doe" rather than by her true name.

Appellant's claim that the use of the pseudonym violated his due process rights by hindering his trial preparation is without merit. The complainant's true name was disclosed to defense counsel during a pretrial hearing. Both appellant and the State mentioned the complainant's name as a proposed witness during voir dire without identifying her as the victim. The complainant testified before the jury that she was going by the fictitious name of Jane Doe for purposes of this case. During the guilt or innocence phase, appellant testified that he knew the complainant by her correct name, "Mrs. B——." Appellant was not surprised by the complainant's name. The record fails to show that appellant's trial preparation was hindered. Further, the complainant's true name was evidentiary and need not have been pleaded. *See Mixon v. State*, 632 S.W.2d 836, 837–38 (Tex.App.—Dallas 1982, pet. ref'd).

Appellant also argues under this point that because a pseudonym was used, he cannot plead this judgment in bar of future prosecutions for the same offense. In *Bryant v. State*, 656 S.W.2d 513 (Tex.App.—Beaumont 1983, pet. ref'd), the court held that an indictment charging the defendant with burglary with intent to commit theft and rape was sufficient to bar a subsequent prosecution for the same offense notwithstanding the fact that the indictment failed to state the name of the intend-

ed rape victim. *Bryant,* 656 S.W.2d at 516. This contention is without merit.

■ Appellant also argues under this point that the trial court erred in overruling his pretrial motion for continuance. However, the trial court merely overruled the pretrial motion for continuance and gave appellant leave to reurge the motion before presenting his case; appellant failed to do so. The trial court did not abuse its discretion in denying appellant's first motion for continuance. *See Owen v. State,* 171 Tex.Crim. 236, 237, 347 S.W.2d 264, 265 (1961).

■ Appellant also claims that the indictment should have been quashed because it violated article I, section 10, of the Texas Constitution. However, article I, section 10, which gives a defendant the right to demand the nature and the cause of the accusation against him, does not give a defendant the right to have the victim's correct name alleged in an aggravated sexual assault indictment. Article I, section 10, requires only that the defendant be given information from the face of the indictment upon which he may prepare his defense. *Voelkel v. State,* 501 S.W.2d 313, 314–15 (Tex.Crim.App.1973). Here, the record reflects that appellant received adequate notice. Appellant was able to adequately prepare a defense because appellant knew the complainant, as she had been his long-time neighbor. Her name had been revealed to him at a pretrial hearing, and he used her name during voir dire. This argument is without merit.

■ Appellant next argues that his motion to quash should have been granted because article 57.02, which allows identification of a sexual assault victim by a pseudonym, only applies to offenses committed on or after January 1, 1988, and this offense was committed on December 25–26, 1987. *See* Code art. 57.02. However, any error was waived because appellant failed to raise this claim in his motion to quash. *See* Code art. 1.14(b); *Jones v. State,* 672 S.W.2d 798, 800 (Tex.Crim.App.1984). Nothing is presented for appellate review. *See Robertson v. State,* 686 S.W.2d 641, 643 (Tex.App.—Corpus Christi 1984, pet. ref'd).

■ Appellant contends that the indictment should have been quashed because the State must plead and prove a victim in aggravated sexual assault cases. Appellant contends that section 22.021 of the Texas Penal Code requires proof that the defendant sexually assaulted "another person." We agree. However, the State did allege that appellant sexually assaulted "another person," Jane Doe, and the victim testified at trial as to the assault. We hold that the State met the pleading and proof requirements of section 22.021 of the Penal Code. We overrule appellant's first point of error.

■ In his second point of error, appellant contends that the indictment failed to provide adequate notice because it did not allege the specific acts or words by which he threatened the complainant. This issue was decided adversely to appellant in *Quevedo v. State,* 661 S.W.2d 321 (Tex.App.—Corpus Christi 1983, pet. ref'd), in which the court held that it is not necessary for an aggravated rape indictment to specify the substance of the threats. *Quevedo,* 661 S.W.2d at 323. Further, the State was not required to plead the substance of the alleged threats because that information is evidentiary and is not essential to giving notice. *Thomas v. State,* 621 S.W.2d 158, 161 (Tex.Crim.App.1981). We overrule appellant's second point of error.

■ Appellant argues in his third point of error that the indictment did not allege the offense in plain and intelligible words. Appellant fails to specify what is not clear about the indictment. At trial, he merely asked that the court take judicial notice of the indictment. Because appellant's motion to quash fails to specify any deficiency, nothing is presented for appellate review. *Jones,* 672 S.W.2d at 800. Moreover, the indictment in this case tracks the statutory language and is legally sufficient. *See Phillips v. State,* 597 S.W.2d 929, 934 (Tex.Crim.App.1980); *Beck v. State,* 682 S.W.2d 550, 554 (Tex.Crim.App. 1985). We overrule appellant's third point of error.

In his fourth point of error, appellant contends that the indictment which alleged that he was indicted by "Good and lawful men duly elected, tried, empaneled, sworn, and charged to inquire of offenses committed within the body of said Dallas County" was an improper comment upon his presumed innocence. This is merely an introductory phrase describing the grand jury; it in no way comments upon appellant's presumed innocence. In the jury charge, the trial court specifically instructed the jury that an indictment is not evidence of guilt and that the instant indictment should not be considered as evidence of guilt. The court also charged the jury that all persons are presumed innocent and that no person may be convicted of an offense unless each element of the offense is established beyond a reasonable doubt, and the fact that he has been arrested, confined, or indicted for or otherwise charged with an offense gives rise to no inference of guilt at trial. The jury is presumed to have followed these instructions. *Rose v. State*, 752 S.W.2d 529, 554 (Tex.Crim.App.1988) (op. on reh'g). We overrule appellant's fourth point of error.

### CONFESSION

In his fifth point of error, appellant contends that the trial court erred in admitting into evidence his confession because it was obtained as a result of duress. At a pretrial hearing concerning the confession, the trial court heard evidence that appellant was allegedly detained for seven hours without being taken before a magistrate. He complains that he was not allowed food or water and was not allowed to see an attorney. The trial court also heard evidence that Officer Mike Bradshaw badgered appellant into signing everything Bradshaw wrote down and that Bradshaw gave appellant two capsules which caused him to pass out.

Officer Bradshaw testified that appellant did not ask for a lawyer. He additionally denied that appellant's request for food and water was refused. He said he gave appellant a cold drink and offered to get him a hamburger, but appellant refused the offer. He said that he did not give appellant any knockout drugs or tranquilizers; however, appellant was given aspirin for his headache when he requested it. Bradshaw testified that the statement was the appellant's words and not his. Bradshaw denied telling appellant that if appellant signed what Bradshaw wrote, it would look better for appellant and that it would look like appellant cooperated. Bradshaw said that later that same night, after appellant signed the statement, he and appellant went out to the woods in an attempt to recover bed linens appellant said were hidden there. The court found that appellant's statement was voluntary and freely made without unlawful compulsion or persuasion. It was admitted over appellant's objection.

The credibility of any and all of the witnesses is for the fact finder. *Coe*, 683 S.W.2d at 438. The fact finder is free to believe or disbelieve any portion or all of a witness's testimony. *Sharp*, 707 S.W.2d at 614. The trial court could have chosen to believe Officer Bradshaw's testimony and disbelieve appellant's, finding that there was no duress. Appellant's claim that the confession is invalid because of the failure to promptly take him before a magistrate is without merit. Article 15.17 directs arresting officers to take arrested persons before a magistrate "without unnecessary delay." Appellant claims that an unnecessary delay occurred because although he was arrested around 12:00 p.m. on January 13, 1988, he gave and signed his confession at around 8:30 p.m. He was not taken before a magistrate during that time, although magistrates were available. The failure of an officer to take an accused before a magistrate only vitiates a confession where there is some causal connection between such failure and the making of the confession. *Niehouse v. State*, 761 S.W.2d 491, 493 (Tex.App.—Dallas 1988, pet. ref'd). The burden is upon the defendant to show that the delay was unreasonable and to show the causal connection between the confession and the delay. *Niehouse*, 761 S.W.2d at 493.

 Appellant has failed to establish that the eight and a half hour delay was "unnecessary." What is a reasonable time depends on the facts and circumstances of a particular case; the length of detention must be considered along with other matters such as accessibility of a magistrate, the facilities involved, administrative duties of arresting officers, intervention of a Sunday or holiday, physical or mental condition of the arrestee, a delay occasioned by the voluntary act of the accused's relieving himself of the burden of guilt, and time spent in further inquiry and investigation to corroborate the statements made by the accused. *Niehouse*, 761 S.W.2d at 494. The record reflects that appellant spent from 12:30 until 7:00 p.m. telling the investigator about appellant's personal history of being sexually abused. At around 7:00 p.m., appellant asked the investigator, "Do you want me to tell you what happened?" The investigator began writing appellant's confession down at 7:55 p.m., and the confession was completed and signed by 8:30 p.m. The delay in taking appellant before a magistrate is easily explained by appellant's voluntary act of freeing himself of guilt and discussing his personal history.

Appellant also failed to establish any causal connection between the alleged unnecessary delay and the confession. Even a lengthy delay in bringing an accused before a magistrate is not enough by itself to show a causal connection between the accused's confession and the failure to take the accused promptly before a magistrate. *Williams v. State*, 692 S.W.2d 671, 675–76 (Tex.Crim.App.1984). Here, appellant never testified that the delay caused him to make his confession, and no other evidence of such a causal connection was presented. We overrule appellant's fifth point of error.

### TRIAL

 In his sixth point of error, appellant contends that the trial court erred in refusing to allow him to cross-examine the complainant as to her true name. The record reflects that appellant was informed of the complainant's true name before trial and that the trial court permitted appellant to use the complainant's true name during voir dire to see whether any of the potential jurors knew the complainant or the facts of the case. Neither side was to disclose the complainant's true name to the news media. Before the jury, the complainant testified that for the purposes of the case she was using the name Jane Doe, which was not her true name. On cross-examination, the complainant testified that her correct name was "M___ K___ B___." The State objected, and a hearing was held outside the presence of the jury at which time she testified as to her true name. The trial court sustained the State's objection that the complainant's true name was irrelevant and immaterial and refused to allow defense counsel to question her as to her true name before the jury.

The trial court properly sustained the State's objection. The complainant's true name was irrelevant. Since the complainant's true name had been revealed to appellant and the jury, no notice problem existed. Relevant evidence is evidence which has a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. TEX.R.CRIM.EVID. 401. Evidence which is not relevant is inadmissible. TEX. R.CRIM.EVID. 402. Here, the complainant had already testified before the jury that Jane Doe was not her true name. Her testimony as to her actual name was not necessary to establish that Jane Doe was a fictitious name. Further, her true name was irrelevant in that it was not of consequence to the action. The trial court did not abuse its discretion in restricting appellant's cross-examination. Because the probative value of the testimony was minimal at best and the prejudicial potential of violating the victim's privacy was great, there was no error in the trial court's actions. *See* TEX.R.CRIM.EVID. 403. Further, any error was cured because the victim's true name came in through appellant's testimony when he identified the victim as "Mrs. B___." We overrule appellant's sixth point of error.

In his ninth point of error, appellant contends that the trial court erred in admitting

into evidence State's exhibits 66 through 77, the complainant's bed clothing and bed linens which were found in the woods, because they were obtained as a result of a search incident to an illegally obtained confession. We have already held the confession was legally obtained. We overrule appellant's ninth point of error.

■ In his eleventh point of error, appellant contends that the trial court erred in refusing to allow a witness, Selina Wade, to testify before the jury. Appellant contends that Wade would have testified that Officer Bradshaw caused her to falsely accuse her grandfather of sexually assaulting her in an unrelated case not involving appellant. Through her testimony, appellant sought to show that Bradshaw was "out to get" his family. The trial court properly excluded Wade's testimony because this evidence was irrelevant to any material issue in this case. *See* TEX.R. CRIM.EVID. 401. Wade's testimony had nothing to do with appellant's sexual assault of M— K— B—. We overrule appellant's eleventh point of error.

■ In his twelfth point of error, appellant claims that the trial court erred in permitting a witness to testify in violation of "The Witness Rule." Rule 613 of the Texas Rules of Criminal Evidence provides that, at the request of a party, the court shall order witnesses excluded from the courtroom so that they cannot hear the testimony of other witnesses.

The record reflects that Ginger Cunningham, the complainant's granddaughter, heard parts of the trial over two or three days, including appellant's testimony. Cunningham was not a fact witness to the crime and had no personal knowledge of it. The State did not anticipate calling Cunningham as a witness. After she heard appellant testify, Cunningham told the prosecutor that she could contradict appellant's testimony that he visited the complainant at 7:00 p.m. on the night of the assault because she was with the complainant until 8:30 p.m. that night. The trial court overruled appellant's objection and permitted Cunningham to testify about the foregoing facts to the jury. Under the

facts of this case, we hold that the trial court did not abuse its discretion by permitting Cunningham's testimony. *See Webb v. State,* 766 S.W.2d 236 *passim* (Tex.Crim. App.1989); *Pena v. State,* 662 S.W.2d 430, 434 (Tex.App.—Corpus Christi 1983, no pet.). We overrule appellant's twelfth point of error.

■ In his thirteenth point of error, appellant contends that the trial court erred in admitting the arrest warrant into evidence. Appellant complains that the warrant contained hearsay statements and was inadmissible. The record reflects that appellant challenged the existence of the arrest warrant when he testified that, during interrogation, Investigator Bradshaw said: "To just be honest about it ... we don't have no [sic] warrant on you right now and everything." The warrant was admitted for the limited purpose of proving its existence on January 13, 1989. The trial court expressly admonished the jury:

THE COURT: I will overrule the objection. I will admit State's Eighty-five, but I will instruct the jury in connection with it that it is admitted for the limited purpose of showing the existence of the instrument itself. You say it is the arrest warrant?

PROSECUTOR: Yes, sir, and the date it was issued.

THE COURT: And the date it was issued in connection with this officer's testimony on this issue. You're not to consider any of the statements contained here as truth of those statements. Do you understand what I'm saying, ladies and gentlemen of the jury? Those statements contained in the warrant are mere hearsay statements, but we're offering it and limiting it strictly for your consideration on the issue whether or not the officer had a warrant in fact, as he said he did when he executed it.

The trial court submitted a similar limiting instruction in the guilt/innocence charge. The arrest warrant was properly admitted for a limited purpose under rule 105(a) of the Texas Rules of Criminal Evidence. The jury is presumed to follow the trial court's instructions. *Rose,* 752 S.W.2d at 554. Be-

cause the arrest warrant was not offered into evidence to prove the truth of the matter asserted, it was not hearsay and was properly admitted. TEX.R.CRIM.EVID. 801(d); *Nixon v. State*, 587 S.W.2d 709, 711 (Tex.Crim.App.1979). We overrule appellant's thirteenth point of error.

 In his seventeenth point of error, appellant contends that the trial court erred in admitting into evidence the "fruits of an illegal search": a pair of appellant's boots, socks, and his denim jacket. Appellant contends that his father had no authority to consent to the warrantless search of his room at his father's house and that the consent was not freely and voluntarily given.

Before the jury, Officer Bradshaw testified that, based on the complainant's statement, the police obtained an arrest warrant to be executed at appellant's father's house. Appellant's father answered the door. The two officers identified themselves and asked if they could look inside the house in an attempt to locate appellant. Appellant's father let the two officers in the house. Bradshaw testified that appellant's father directed the officers to appellant's bedroom where the officers observed the boots, the socks with what appeared to be blood on them, and a denim jacket. At this point, appellant objected to the discussion of blood on items which were not yet in evidence. Appellant did not raise any search-based objection. Later, defense counsel requested a hearing outside the presence of the jury on the search issue.

During this hearing, Bradshaw testified that appellant's father orally consented to the search of his house. The officers informed appellant's father that their purpose was to locate and arrest appellant on a felony warrant and that they had reason to believe appellant was in the house. Appellant's father invited the officers in. Bradshaw testified that the house was under construction and was somewhat incomplete; blankets were hung from the ceilings to block off halls and rooms. Appellant's father pointed out and directed the police to appellant's bedroom, which was

blocked off with a blanket, and said that this was appellant's room.

 The exhibits were admissible based on the oral consent exception to the search warrant requirement. No search warrant is required if oral consent is obtained and the search is limited to the scope of the consent. *Montoya v. State*, 744 S.W.2d 15, 25 (Tex.Crim.App.1987), *cert. denied*, 487 U.S. 1227, 108 S.Ct. 2887, 101 L.Ed.2d 921 (1988). A third party may properly consent to a search of premises over which they have equal control and equal use. *Becknell v. State*, 720 S.W.2d 526, 528 (Tex.Crim.App.1986); *Sorensen v. State*, 478 S.W.2d 532, 850 (Tex.Crim.App. 1972). The State must show that the consent was voluntary. *Paulus v. State*, 633 S.W.2d 827, 850 (Tex.Crim.App.1982) (op. on reh'g).

The record reflects that appellant lived in the home owned by his parents. Appellant's bedroom was not locked; it merely had a blanket in front of it to block the cold. Appellant's family was not denied access to his bedroom. Appellant participated in family life in the house and obeyed the family rules against drinking alcohol in the house. Because appellant's father had equal control over and equal access to appellant's bedroom, he had the authority to consent to the search of the bedroom. Appellant relies on *Becknell* where the court held that the defendant's father lacked the authority to consent to the search of the defendant's bedroom where the father testified that the defendant had kept his room padlocked for the past two years and kept the only key to it, where the father and other family members were allowed in the room only when the defendant was there, and where the defendant cooked and ate his own meals separately from the rest of the family. The court held that on "the narrow facts" of *Becknell*, the father did not exercise equal control over the bedroom and thus lacked authority to consent to its search. *Becknell*, 720 S.W.2d at 528. *Becknell* is readily distinguishable because appellant's room was open to other family members and appellant participated in family life and obeyed the family's rules. Ap-

pellant's father had the authority to consent to the search of appellant's bedroom.

The father's consent was voluntary. Appellant's father consented to the search of the entire house, knowing that the police were trying to locate and arrest appellant. The search was valid based on the father's oral consent. *See Paulus*, 633 S.W.2d at 850. We overrule appellant's seventeenth point of error.

In his fifteenth point of error, appellant contends that a fatal variance existed between the indictment and the proof because the State failed to prove that the complainant was the one listed in the indictment. The complainant testified that she was going by the name Jane Doe for the purposes of the trial. The State sufficiently proved that the victim was Jane Doe. No fatal variance existed. *See Stephens v. State*, 433 S.W.2d 428, 429 (Tex.Crim.App. 1968). *Guerrero v. State*, 626 S.W.2d 875 (Tex.App.—San Antonio 1982, no pet.), cited by appellant, is inapplicable in the pseudonym indictment context. *Guerrero* was a forgery case in which the court found a fatal variance where the indictment alleged that the defendant passed a forged check to the store owner, but the evidence established that the defendant passed the check to the store manager. *Guerrero*, 626 S.W.2d at 876. *Guerrero* is distinguishable from the instant case in that there was never any question that only one victim, Jane Doe, was involved. We overrule appellant's fifteenth point of error.

### JURY CHARGE

In his seventh point of error, appellant contends that the trial court erred in overruling his objection to the use of the pseudonym Jane Doe in the jury charge. Appellant contends that a fatal variance existed between the evidence, the victim's name, and the Jane Doe allegation in the indictment. This contention has already been rejected in the discussion under appellant's fifteenth point of error. We overrule appellant's seventh point of error.

In his eighth point of error, appellant contends that the trial court erred in denying his request under Code article 15.-17 to instruct the jury that in determining the voluntariness of a confession, the law provides that a person making an arrest shall without unnecessary delay take the person arrested before a magistrate, and further instruct the jury concerning what the magistrate is to do. *See* Code art. 15.17. Appellant contends that he has shown a causal connection between the delay in taking him before a magistrate and his confession. As discussed under appellant's point of error number five, appellant failed to establish that his confession was connected with any unnecessary delay in taking him before a magistrate. Where no evidence before the jury raises an issue that the defendant's confession was causally connected to any unreasonable delay in taking him before a magistrate, no jury instruction on article 15.17 is required. *De La Rosa v. State*, 658 S.W.2d 162, 166–67 (Tex.Crim.App.1983). We overrule appellant's eighth point of error.

### PROSECUTORIAL ARGUMENT/MISCONDUCT

In his tenth point of error, appellant contends that the trial court erred in failing to grant his motion for mistrial for prosecutorial misconduct. The prosecutor, following appellant's answer to a question, said, "Excuse me. He did not take a DNA test. That is a misrepresentation." Appellant contends that this is improper unsworn testimony. The trial court sustained the objection, instructed the jury to disregard the comment, but overruled appellant's motion for mistrial.

In our view, the comment was not clearly calculated to inflame the jurors' minds and was not of such character so as to suggest the impossibility of withdrawing the prejudicial impression. The instruction cured any error, and no mistrial was required. *Todd v. State*, 598 S.W.2d 286, 293–94 (Tex. Crim.App.1980). This single isolated comment is not sufficient to establish prosecutorial misconduct necessitating a mistrial. *See Wright v. State*, 609 S.W.2d 801, 804–06 (Tex.Crim.App.1980). Appellant's tenth point of error is overruled.

In his fourteenth point of error, appellant contends that the trial court erred in overruling his motion for mistrial based on the following jury argument at the punishment phase:

PROSECUTOR: If you think that any one of those family members is going to be dog-tailing him and keeping him out of trouble, then you're living in a dream world because it is just not going to happen. I think all their intentions are well and good, but let's be a little realistic about it.

Now, I have shown you these pictures time and time again. The reason why I want you to is because during the punishment phase of the trial, of the Defendant parading his family members in here [sic], Ms. Doe is not here today. She is at home. I talked to her. She—

DEFENSE COUNSEL: I'm going to object. That's outside the record—unsworn testimony of the prosecutor.

THE COURT: I will sustain the objection.

DEFENSE COUNSEL: Ask that the jury be instructed to disregard.

THE COURT: Disregard that last argument.

DEFENSE COUNSEL: Move for a mistrial.

THE COURT: Deny that.

Any error in the prosecutor's statement that she spoke to the victim and that the victim was at home was cured when the trial court sustained appellant's objection and instructed the jury to disregard the prosecutor's comment. The remark was not so inflammatory that its prejudicial effects could not be removed by such an admonishment. *McKay v. State,* 707 S.W.2d 23, 37 (Tex.Crim.App.1985), *cert. denied,* 479 U.S. 871, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986). We overrule appellant's fourteenth point of error.

We affirm the trial court's judgment.