IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-91-199-CR





LUIS GUERRERO CORONA,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE



 




FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT



NO. 39,496, HONORABLE JOE CARROLL, JUDGE 



 




 This appeal is taken from a conviction for burglary of a habitation. After the jury
found appellant guilty, he entered a plea of "true" to the enhancement allegations of the indictment
that he had been previously convicted of burglary. The trial court assessed appellant's punishment
at thirty-five years' imprisonment.

 Appellant advances three points of error. He challenges the sufficiency of the
evidence to sustain his conviction, and he complains that the trial court erred in overruling his
motions for mistrial following improper jury argument by the prosecutor.

 Initially, appellant argues that the evidence was insufficient to prove that he
intentionally and knowingly entered a habitation without the effective consent of Tricia Norwood,
the owner, and therein attempted to commit and committed theft. The indictment charged an
offense under Tex. Penal Code Ann. § 30.02(a)(3) (West 1989).


 On August 12, 1990, Tricia K. Norwood had resided in a duplex at 713 West
Avenue H in Temple for approximately two weeks. She had not completely unpacked her
personal property. The appellant, Luis Corona, and Rebecca Davila lived in the adjoining duplex
at 711 West Avenue H. About 4:00 p.m. on August 12, 1990, Norwood locked and secured her
duplex, and went to the movies with her boyfriend, Donald Wyatt, and Clay Wyatt, age four. 
They returned about 6:00 p.m. and discovered some of the glass panels in the front door of the
duplex had been broken. The broken glass was on the floor inside the house. Norwood and
Donald Wyatt did not initially discover any property to be missing.

 While they discussed the situation on the porch, Rebecca Davila approached them
and asked if the police had been called. Davila suggested that the appellant might have broken
into Norwood's duplex as he had been talking about getting into the duplex to see if there were
any jewelry or other property in the house. Davila also related that the appellant had been
watching the duplex, noting Norwood's movements to and from the duplex. Norwood left to call
police from a pay phone but was able to flag down Temple Police Officer John Palamara. While
Palamara looked for fingerprints at the scene, Davila called Norwood to come to the duplex that
Davila shared with the appellant. In the bathroom, Davila showed Norwood a gold woman's
bracelet, earrings and a chain, all of which Norwood identified as her property. Officer Palamara
came to appellant's duplex and took possession of the jewelry as evidence. He returned to the
Norwood residence to continue his investigation of the burglary. Norwood then discovered she
was missing some money and coins she had collected. She again went next door and made inquiry
of Davila. Davila took her to the bathroom and showed her a pair of shorts on the bathroom floor
which Norwood had seen the appellant wear. Davila took out of the front pocket of the shorts a
two-dollar bill, two Kennedy half dollars, an Eisenhower silver dollar, and a slug. Norwood
identified these items as belonging to her and as items kept in her residence. Davila returned the
items to the shorts and Officer Palamara was again summoned. He found these items and some
Mexican coins in the lime-green shorts and retained them as evidence. Officer Palamara also
lifted one good fingerprint from the glass on Norwood's front door, but the evidence did not
reveal the identity of the person whose fingerprint it was.

 Donald Wyatt corroborated much of Norwood's testimony at trial. Paul Boldt, the
owner of the duplexes in question, talked to the appellant on August 21, 1990. Boldt had heard
about the burglary and knew that appellant was a suspect. He wanted to talk to the appellant
about back rent and the damages to Norwood's front door. Boldt demanded one hundred dollars
for the damages, but appellant took issue with Boldt about the amount since only two pieces of
glass had been broken. Appellant took Boldt to the damaged door, pointing out the two missing
panes of glass. Appellant then demonstrated to Boldt how he had kicked out the glass and had
reached in to unlock the door to Norwood's duplex. Boldt related that appellant agreed to pay for
the damages to the door, but claimed he did not have the money at that time. When Boldt later
returned and asked again for the money for the rent and damages to the door, appellant denied
owing money for the damages to Norwood's door, did not recall any previous conversation with
Boldt about the matter, and stated he was not going to pay any money.

 Appellant offered no evidence. In arguing the legal sufficiency of the evidence,
appellant contends that the conviction rests upon circumstantial evidence. Appellant urges that
while Boldt's testimony was direct evidence that he unlocked the Norwood door after breaking
the glass, there was no direct evidence thereafter that he "attempted to commit and committed
theft" as the State saw fit to allege in the indictment. Appellant notes that no witness placed him
in possession of any of the items supposedly taken from the Norwood residence.

 The standard for reviewing the legal sufficiency of the evidence as raised here is
whether, viewing the evidence in the light most favorable to the jury's verdict, any rational trier
of fact could have found beyond a reasonable doubt the essential elements of the offense charged. 
Jackson v. Virginia, 443 U.S. 307, 319 n.12 (1979); Valdez v. State, 776 S.W.2d 162, 165 (Tex.
Crim. App. 1989), cert. denied, 495 U.S. 963 (1990). This familiar standard gives full play to
the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the
evidence and to draw reasonable inferences from basic facts to ultimate facts. Jackson v.
Virginia, 443 U.S. at 319. (1)

 The standard for review is the same in both direct and circumstantial evidence
cases. Herndon v. State, 787 S.W.2d 408, 409 (Tex. Crim. App. 1990); Butler v. State, 769
S.W.2d 234, 238 (Tex. Crim. App. 1989). When reviewing the sufficiency of circumstantial
evidence, we ordinarily utilize the outstanding reasonable hypothesis theory as an analytical tool. 
Madden v. State, 799 S.W.2d 683, 690 (Tex. Crim. App. 1990). (2) The State must meet its burden
of proof by excluding all reasonable hypotheses other than the defendant's guilt before a
conviction may be sustained. Guerrero v. State, 720 S.W.2d 233, 236 (Tex. App.--Austin 1986,
pet. ref'd). If, after viewing the evidence in this light, there is a reasonable hypothesis other than
the guilt of the accused, then it cannot be said that guilt has been shown beyond a reasonable
doubt. Anderson v. State, 701 S.W.2d 868, 872 (Tex. Crim. App. 1985), cert. denied, 479 U.S.
870 (1986). The "rule that evidence must exclude every reasonable hypothesis of innocence refers
to evidence which the jury believes and relies upon to support its verdict." State v. Poellinger,
451 N.W.2d 752, 756 (Wisc. 1990).

 We conclude, viewing the evidence in the light most favorable to the jury's verdict,
and accepting all credibility choices and reasonable inferences made by the jury, that a rational
trier of fact could have found beyond a reasonable doubt all the essential elements of the offenses
charged. See United States v. Bland, 653 F.2d 989, 995 (5th Cir.), cert. denied, 454 U.S. 1055
(1981). Appellant's first point of error is overruled.

 In his second point of error, appellant urges that the trial court erred in overruling
his motion for mistrial "after the State argued that the law prohibited it from calling Rebecca
Davila to testify since she was the spouse of Luis Corona, when there was no evidence in the
record as to the marital status of the parties."

 The complained-of argument by the prosecutor is as follows:


 MR. GARZA: I too would like to thank each of you for your attention that
you've had since yesterday. The case is one I think, as I put to you yesterday, it's
a question of who did it. No question about that, I knew that coming in, Mr.
Odom knew that coming in, and it really boils down and resolves itself to the fact
did Rebecca Davila set up Luis Corona? Because that's really what Bob Odom's
arguing to you, Rebecca Davila set him up.


 Rebecca Davila, who had been living with this man since April of 1990,
and still lives with him today, Rebecca Davila that was not called by the State, that
Mr. Odom comes and smears on the State of Texas and the aspect of failure of us
to call. Let me say this, the State of Texas cannot call the spouse of a witness --


 MR. ODOM: Your Honor, I'm going to object to that, that's outside the
record. There's not one shred of evidence and it's untrue that they've even been
married, common-law or any other way; Mr. Garza knows it.


 THE COURT: Sustained.


 MR. GARZA: You know that and --


 MR. GARZA: -- and I know that and the law allows it --


 THE COURT: I'll sustain the objection.


 MR. ODOM: Your Honor, we'd ask the jury be instructed to disregard --


 THE COURT: Ladies and gentlemen of the jury, you should disregard the
comments of --


 MR. GARZA: He was asking why the State didn't call, and I'm
responding directly to that comment, judge.


 THE COURT: Ladies and gentlemen of the jury, you are instructed to
disregard the comments the prosecutor made regarding the spouse. There's no
evidence in the record regarding marital situation.


 MR ODOM: We'd move for mistrial, Your Honor.


 THE COURT: Overruled.


 MR. GARZA: You look at it for yourselves, folks. These people living
together, staying with each other, same place. This is the man that's the financial
aspect of that household right here, Luis Corona. What Ms. Davila does is stay
and take care of the child, since April, still as of today, and yet they come here and
want to say that she's not here. That's the point I'm trying to make. You look at
it for yourselves. You don't have to be married in the church to be married as
common-law husband and wife.


 MR ODOM: Your Honor, I'm going to object, he's arguing the same thing
in violation of the ruling of this Court. She signed a consent to search, Rebecca
Davila. She's never held herself out to be the spouse of Mr. Corona at any time
under the evidence of this case, or anywhere else.


 THE COURT: I'll sustain it; I believe the argument is outside the record.


 MR. ODOM: Your Honor, we'll request a mistrial and instruct to
disregard --


 THE COURT: The jury will disregard the comments of the District
Attorney regarding marital status, and I'll overrule your motion for mistrial.


 MR. GARZA: Your Honor, again I'm referring directly to his comment
why, his explanation, I think he opened the door as to that."


 THE COURT:  Ladies and gentlemen of the jury, please disregard the
comments of the District Attorney.



 Within the area of proper jury argument are (1) summation of the evidence;
(2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) a
plea for law enforcement. Kinnamon v. State, 791 S.W.2d 84, 89 (Tex. Crim. App. 1990);
Albiar v. State, 739 S.W.2d 360, 362 (Tex. Crim. App. 1987); Miranda v. State, 813 S.W.2d
724, 741 (Tex. App.--San Antonio 1991, pet. ref'd). It is proper for a prosecutor to draw
reasonable deductions from the evidence and to respond to arguments made by a defense counsel
so long as he does not exceed the scope of the invitation. Andujo v. State, 755 S.W.2d 138, 144
(Tex. Crim. App. 1988); see also Bush v. State, 773 S.W.2d 297, 301 (Tex. Crim. App. 1989).

 Appellant, in his jury argument, hammered at the State's failure to call Davila as
a witness. In effect, he taunted and challenged the State to explain why it had not called Davila,
who was available. Some of the repeated comments include:


 MR. ODOM: So what you have if you analyze the evidence is what
Rebecca Davila told everybody else . . . we have not heard from Rebecca Davila
. . . . The burden never shifts to us . . . . and I'm not going to call her to the
stand, he's got the burden of proof. If I call her to the stand I ought to quit
practicing law. If he doesn't want to call the only witness that he claims he has,
far be it from me to do that . . . . The State is relying upon the credibility of a
witness they have never even called before you to testify, and not a witness that's
gone, a witness that was sitting right out there in the hall.



 The record also reflects that appellant cross-examined Donald Wyatt, referring to
Davila as appellant's wife, and received answers based upon his questions. There was evidence
that Davila had lived with the appellant and was still living with him at the time of the trial. At
the time of the investigation, Davila indicated her fear of the appellant and stated that she "didn't
want any part of any kind of testifying or anything, court proceeding."

 It appears that the prosecutor was drawing reasonable deductions from the evidence
and responding to the argument of opposing counsel. The argument was invited and was proper. 
Moreover, an instruction to disregard is ordinarily sufficient to cure an improper jury argument
unless the remark is so inflammatory that its prejudicial effect cannot reasonably be removed by
such admonishment. McKay v. State, 707 S.W.2d 23, 37 (Tex. Crim. App. 1985), cert. denied,
479 U.S. 871 (1986); Sallings v. State, 789 S.W.2d 408, 419 (Tex. App.--Dallas 1990, pet. ref'd). 
We hold that even if the argument was error, it was cured by the court's instruction to the jury. 
See Soto v. State, 810 S.W.2d 861, 864 (Tex. App.--Fort Worth 1991, pet. ref'd). Appellant's
second point of error is overruled.

 In his third point of error, appellant contends that the trial court erred in overruling
the mistrial motion when the prosecutor argued outside the record about "fingerprints." In his
closing argument, the prosecutor argued:


 Fingerprints. We don't have them on Luis Corona, we don't have them. 
Rebecca Davila, if we had them we wouldn't be here.


 MR. ODOM: Your Honor, I'm going to object to that, he's testifying
totally and completely out of the record.


 MR. GARZA: Judge, I think that's a reasonable deduction from the
evidence.


 If Rebecca Davila's prints were found at the burglary scene, Luis Corona
would not be tried for this burglary.


 MR. ODOM: He's testifying again, Your Honor.


 THE COURT: I'll sustain the objection.



The court instructed the jury to remember the evidence and not to consider the prosecutor's
remarks. The mistrial motion was overruled.

 Appellant's counsel had argued that Officer Palamara had lifted a clear and readable
fingerprint at the point of entry, but the State, with its burden, had not shown whose print it was. 
Counsel repeatedly stated that if it had been appellant's, "you can bet you would have heard about
it." In response, the prosecutor made the complained-of remarks. He agreed with appellant's
counsel that the print was not that of the appellant's but added that if Davila's prints had been
found, the appellant would not have been tried. The prosecutor has a right to respond to opposing
counsel's argument. Todd v. State, 598 S.W.2d 286, 296-97 (Tex. Crim. App. 1980). If his
remarks inferring the print was not Davila's were improper, we conclude that the court's prompt
instruction cured any error. Brown v. State, 692 S.W.2d 497, 502 (Tex. Crim. App. 1985). 
Appellant's third point of error is overruled.

 The judgment is affirmed.



 John F. Onion, Jr., Justice


[Before Justices Powers, B. A. Smith and Onion*]

Affirmed

Filed: October 21, 1992

[Do Not Publish]















* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1988).
1.   The jurors are the triers of the fact, the judges of the credibility of the witnesses and of the
weight to be given their testimony. See Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979). 
The jurors may believe or disbelieve all or any part of a witness's testimony. Williams v. State,
692 S.W.2d 671, 676 (Tex. Crim. App. 1984). And it is within the province of the jury to
resolve any conflicts in the evidence. Bowden v. State, 628 S.W.2d 782, 784 (Tex. Crim. App.
1982).
2.   In Geesa v. State, 820 S.W.2d 154, 160-61 (Tex. Crim. App. 1991), the court rejected the
use of the "outstanding reasonable hypothesis theory" as an analytical construct. However, the
Geesa decision is to be applied prospectively to cases tried after November 6, 1991, the date of
the decision. The instant case was tried in April 1991.