Andy Harold WILKERSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 12–86–0215–CR.

Court of Appeals of Texas,
Tyler.

Sept. 18, 1987.

Rehearing Denied Feb. 2, 1989.

Thomas A. Dunn, Tyler, for appellant.

Jack Skeen, Jr., Dist. Atty., Tyler, for appellee.

COLLEY, Justice.

Andy Harold Wilkerson was convicted of aggravated sexual assault[1] by a jury who assessed his punishment at forty-five years.

Wilkerson argues that (a) the court erred in excluding the testimony at the punishment phase of his witnesses, Drs. Wendall Dickerson and Charles Fries, psychologists; (b) the evidence is insufficient to support his conviction; and (c) the court erred in admitting his written confession before the jury. We will reverse and remand for a new trial as to punishment.

On February 9, 1986, B— W— (the victim) was working an eight-hour shift as the sole clerk in Food Fast West, a convenience store located west of Tyler on Highway 64 in Smith County. She began her eight-hour shift on February 8, 1986, at 11:00 P.M.

Shortly before midnight, she observed two males in a silver Monte Carlo (Chevrolet) automobile parked in front of the convenience store. She became suspicious because the males were "staring" at her, so she recorded the license plate letters and numbers on the vehicle.[2]

Shortly thereafter, in a matter of minutes, a male identified by B— W— as Andy Wilkerson, the defendant, entered the store wearing a make-shift mask consisting of a pair of children's underpants which covered a part of his face. He jumped over a counter in the store and, according to B— W—'s testimony, grabbed her with both hands around the neck stating, "Bitch, you are going with me." B— W— testified that the male then forced her out of the store and into the Monte Carlo automobile occupied by another adult male. B— W— related that following her abduction she was forced to perform oral sex on the defendant and his brother who was driving the vehicle; that the defendant and his brother both penetrated her anus and vagina with their penises, and that the defendant also penetrated her anus and vagina with his finger. She testified that she had pleaded repeatedly with her assailants not to hurt her. Further, she testified that in response to these pleas both the defendant Wilkerson and his brother stated that if she did what they asked her to do she wouldn't be harmed.

The continuing sexual assaults on the victim lasted for approximately one and one-half hours. The two assailants returned B— W— to a location near the store and released her. She suffered no serious bodily injuries at their hands and neither of her assailants exhibited a weapon of any kind, either before, during or after the sexual assaults. B— W— did report to the doctor who examined her that her neck and head were tender because of the treatment she received at the hands of Wilkerson and his brother. The physician testified that his examination revealed that B— W— had no serious injuries to her body, but he did note a bruise on her chest.

The victim testified that at all times during her ordeal she was in fear that the brothers would hurt or kill her.

Wilkerson testified at the guilt-innocence stage, admitting that he inserted his penis in the victim's mouth and that he inserted his finger and "maybe" his penis in the victim's vagina. He denied that he had anal intercourse with her or that he inserted his finger in B— W—'s anus. He also denied making any threat to harm B— W—.

1. Tex.Penal Code Ann. §§ 22.011(a)(1)(A), (B), 22.021(a)(2) (Vernon Supp.1987).

2. The vehicle was registered and titled in the name of Jeff Wilkerson, the defendant's younger brother.

He testified that each time the victim begged him not to hurt her, he responded, "[w]e are not going to hurt you...." Wilkerson admitted that the Monte Carlo was his brother's car and that his brother Jeff drove the vehicle during the entire criminal episode.

Wilkerson asserts by his third point of error that the evidence is insufficient to support his conviction of aggravated sexual assault as distinguished from sexual assault.[3] Wilkerson correctly states that the evidence does not establish that either he or his brother before, during or after the instant criminal episode made any express oral threat "in the presence of [B_ W_] ... to cause [her] death or serious bodily injury...."[4]

The aggravated offense was submitted to the jury in the following language:

Now, if you find from the evidence beyond a reasonable doubt that on or about the 9th day of February, 1986, in Smith County, Texas, the defendant, ANDY HAROLD WILKERSON, did then and there intentionally or knowingly, by using force or violence against [B_ W_] or by threatening to use force or violence against [B_ W_], cause the penetration of the mouth of [B_ W_] by inserting his penis therein or the penetration of the anus or vagina of [B_ W_] by inserting either his penis or finger therein, and in any event without the consent of [B_ W_], and that she was not then the spouse of the defendant, and, if you further find from the evidence beyond a reasonable doubt that by acts or words the defendant placed [B_ W_] in fear that death or serious bodily injury would be imminently inflicted upon her or by acts or words occurring in the presence of [B_ W_] the defendant threatened to cause the death or serious bodily injury of [B_ W_], then you will find the defendant guilty of aggravated sexual assault as charged in the indictment.

Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant of aggravated sexual assault.

Under this charge, the jury was properly authorized[5] to convict Wilkerson of aggravated sexual assault if they found beyond a reasonable doubt that he committed sexual assault, and that by acts or words he placed B_ W_ in fear that death or serious bodily injury[6] would be imminently inflicted upon her.

Wilkerson argues, in effect, that the sum of his acts and words during the criminal episode were not death threatening or so grievous as to produce fear in the mind of a reasonable person in the victim's circumstances that she would be killed or seriously injured by Wilkerson. He urges us to adopt an appropriate standard of review of the evidence in aggravated sexual assault cases, and observes, "[t]here are divergent holdings in the Court [sic] of Appeals" respecting the standard of review in these cases.

◼ The standard of review of the sufficiency of the evidence, whether direct or circumstantial, to support a criminal conviction in Texas, as suggested by *Combs v. State*, 643 S.W.2d 709, 716–17 (Tex.Cr.App. 1982), and mandated by *Sutherlin v. State*, 682 S.W.2d 546, 548–49 (Tex.Cr.App.1984), "is to review the evidence in the light most favorable to the verdict ... to determine whether any rational trier of fact could find the essential elements of the ... [offense to be established] beyond a reasonable doubt."[7] *Sutherlin*, 682 S.W.2d at 549. While we are not free to modify that standard of review, we may, subject to the veto of the Court of Criminal Appeals,

---

3. Wilkerson judicially confessed to the offense of sexual assault as defined in Tex.Penal Code Ann. § 22.011(a)(1)(A), (B).

4. An aggravating factor under section 22.021(a)(3).

5. Under Sections 22.011(a)(1)(A), (B) and 22.021(a)(2).

6. As defined in Section 1.07(a)(34) (Vernon 1974).

7. Identical to the minimum due process standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

adopt a suitable analysis of the evidence *in applying* the approved standard. *Compare Carlsen v. State*, 654 S.W.2d 444, 449 (Tex.Cr.App.1983) (opinion on State's Motion for Rehearing).

■ In *Dodson v. State*, 699 S.W.2d 251, 254 (Tex.App.—Tyler 1985, no pet.), confronted with the identical issue here presented,[8] we wrote:

"[I]n aggravated rape cases, we should review the evidence overall, and determine whether the 'acts, words or deeds' of the actor were sufficient to place a reasonable person in complainant's circumstances in fear of death or serious bodily injury to be imminently inflicted upon her ... at the hands of her attacker."

We adhere to that analysis. The language of former article 21.03(a)(2) is identical to the language of section 22.021(a)(2).

■ The record reveals that B_ W_ was roughly handled by her attackers; she was carnally ravaged repeatedly by both Wilkerson and his brother; she was taken forcibly to a remote location, stripped of her clothing, and continually humiliated. She implored Wilkerson not to hurt her. His only response according to her testimony was, in effect, you do what we want and you won't be harmed. She was abjectly helpless and her prospects for escaping death or at least serious bodily injury reasonably appeared to be bleak. The sexual assaults on her constituted brutality of the lowest order.

We conclude, from our review of all the facts and circumstances presented by the evidence, that the callous words and brutish acts of Wilkerson and his brother "were sufficient to place a reasonable person in [B_ W_'s] circumstances in fear [that] death or serious bodily injury [would] be imminently inflicted upon her ... at the hands of her attacker[s]." *Dodson*, at 254; *see also Seek v. State*, 646 S.W.2d 557, 560 (Tex.App.—Houston [1st Dist.] 1982, no pet.).

Therefore, viewing the evidence in the light most favorable to the verdict, we conclude that any rational trier of fact could find the essential elements of aggravated sexual assault as submitted in the charge to be established beyond a reasonable doubt. Wilkerson's third point is overruled.

■ Wilkerson by his fourth point of error claims that his written confession was admitted into evidence in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). Wilkerson asserts the confession was inadmissible because it resulted from custodial interrogation initiated by police authorities after he had invoked his right to counsel. Assuming, without deciding, that the confession was inadmissible,[9] the claimed constitutional error is, in our opinion, harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Fahy v. Connecticut*, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963); *Beck v. State*, 712 S.W.2d 745, 747–49 (Tex.Cr.App.1986).

Wilkerson by his extrajudicial confession, admitted the sexual assault on B_ W_. He took the stand in his own defense at the guilt-innocence stage. His testimony regarding the offense is virtually identical to his written version. Under the record, we conclude that average jurors "would not have found the State's case significantly less persuasive had [the confession] been excluded." *Schneble v. Florida*, 405 U.S. 427, 432, 92 S.Ct. 1056, 1060, 31 L.Ed.2d 340 (1972). Thus, in our view, no reasonable possibility exists that the written confession might have contributed to Wilkerson's conviction of aggravated sexual assault. Hence, the court's error, if any, in admitting the confession into evidence does not require reversal.

Wilkerson argues under his first two points of error that the court erred in ex-

---

8. Under former section 21.03(a)(2), Act of April 30, 1981, Ch. 96, § 1, 1981 Tex.Gen.Laws 203, repealed, Act of June 19, 1983, Ch. 977, § 12, 1983 Tex.Gen.Laws 5311, 5321.

9. Under both Federal and State Constitutions.

cluding the testimonies of Drs. Wendell L. Dickerson and Charles Fries, clinical psychologists, offered by him at the punishment stage.

Wilkerson was eligible for probation, and the court submitted an appropriate charge to the jury on the law of probation. We have the excluded testimonies before us as a part of the record by way of informal bills of exception.

■ After Dr. Dickerson testified outside the presence of the jury, the court refused to admit his testimony, accurately characterizing his testimony as "indecisive." Dr. Dickerson testified, when asked about Wilkerson's prospects for rehabilitation, that he was unable to give an unqualified answer, saying "I am reluctant to draw any conclusion about Andy Wilkerson, because I don't know him and have not examined him. I would say that the factors that you describe argue favorably for the possibility of his rehabilitation, yes." Conceding that Dr. Dickerson's expert testimony, theoretically rating sexual offenders, and distinguishing those who can and those who cannot be rehabilitated to be technically sound, and conceding as well, that Dickerson's testimony was admissible under *Allaben v. State*, 418 S.W. 2d 517, 519 (Tex.Cr.App.1967), and Tex.R. Crim.Evid., 402, 702,[10] nevertheless, the exclusion by the trial court of that evidence does not rise to the level of reversible error. Any error in its exclusion was harmless beyond a reasonable doubt. Tex. R.App.P. 81(b)(2) (Vernon Supp.1987). Indeed, in our opinion, Dr. Dickerson's testimony would have had an impact on the minds of reasonable jurors unfavorable to Wilkerson. The point of error is overruled.

■ Dr. Fries testified he was acquainted with Andy Wilkerson and had consulted with Wilkerson in February 1986 and on seven other occasions. He testified that Wilkerson came to him "asking for help with his depression and conflict that he was having inside himself and his family." Dr. Fries testified that Wilkerson was "very remorseful, felt guilty about what he

had done, and wanted to figure out why he had done that [the sexual assault]." Fries further testified that Wilkerson's problem was solvable because "his primary problem has been his alcohol abuse and his drug usage," and that since he [Fries] began working with Wilkerson that there was "no indication that [Wilkerson] had been using ... alcohol or drugs, and he has been involved in AA in conjunction with the work he has done in my office."

Defense counsel asked Dr. Fries, "In your opinion ... do you think this problem would be manageable over a ten year period of probation?" Dr. Fries answered, "Yes sir."

In our view Dr. Fries' testimony was relevant to Wilkerson's application for probation. Rule 402; *Allaben*, 418 S.W.2d at 519. Additionally, the expert's opinion testimony meets the requirements of Rule 702. The court erred in excluding it.

We do not agree with the State's contention that Fries' testimony is of the same character as the evidence offered by the defendant in *Stiehl v. State*, 585 S.W.2d 716, 718 (Tex.Cr.App.1979). In *Stiehl*, the court ruled that the exclusion by the trial judge of evidence of the condition of the county jail in mitigation of punishment was not error, holding that "factors which arise after the offense and *independently* of the defendant should not be allowed into evidence in mitigation of punishment." The *Stiehl* court further commented that "Stiehl's pretrial confinement in jail had nothing to do with the offense for which he was prosecuted nor with any of the statutory mitigation factors." (Emphasis ours.)

The State misreads *Stiehl*. *Stiehl* reaffirms the holding in *Allaben* that "evidence that is relevant to the application for probation ... is also admissible."

■ Furthermore, we do not agree with the State's argument that the error is harmless beyond a reasonable doubt. The record reveals that Wilkerson's wife, mother, father and mother-in-law testified at the punishment phase to the same facts which basically formed the foundation of Dr.

---

10. All reference to rules are to the Texas Rules

of Criminal Evidence unless otherwise noted.

Fries' professional opinion that Wilkerson's problem with alcohol and drug was manageable. In addition, Wilkerson's employer and several of his friends and neighbors testified to his good reputation as a peaceable and law-abiding citizen. Wilkerson's brother-in-law also testified that Wilkerson was seeking help for his alcohol problem. Wilkerson's wife in her testimony related that Wilkerson was seeing Dr. Fries on a regular basis. Wilkerson himself testified at the punishment phase and stated that he was "ashamed of what [he] did to B_ W_," and that he had been "seeking counseling from ... Dr. Fries," that he had stopped drinking and using drugs, and that he was "attending alcoholic's anonymous."

We conclude that the opinion of Dr. Fries, who holds a doctoral degree in counseling and psychology, might well have been persuasive. Further, his testimony might also have imparted credence to the testimonies of the relatives and friends testifying in Wilkerson's behalf. While Dr. Fries' testimony was cumulative with respect to the facts forming the foundation of his opinion, we are unable to conclude beyond a reasonable doubt that the error in excluding his opinion that Wilkerson's "problem [was] manageable over a ten-year period of probation" made no contribution to the punishment assessed by the jury in this case. Tex.R.App.P. 81(b)(2) (Vernon Supp.1987). The second point of error, therefore, must be sustained.

The judgment is reversed and this cause is remanded for a new trial as to the issue of punishment only. Act of May 26, 1987, ch. 179 § 1, 1987 Tex.Sess.Law Serv. 2711, 2712 (Vernon).