**Danny Atherton NIEHOUSE, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**Nos. 05–87–01301–CR, 05–87–01302–CR, and 05–87–01303–CR.**

Court of Appeals of Texas, Dallas.

Nov. 18, 1988.

Garry A. Udashen, Dallas, for appellant.

Donald G. Davis, Dallas, for appellee.

Before HOWELL, BAKER and THOMAS, JJ.

BAKER, Justice.

In a bench trial, appellant was convicted of three offenses of murder and sentenced to life in each case. He contends that the trial court erred by failing to suppress his confessions because: (1) the arresting officer did not take him before a magistrate without unnecessary delay; and (2) they were the fruits of an illegal arrest. We find no error and affirm the judgments.

In April 1987, appellant was living in a "halfway house" in Dallas. At this time appellant had been telling stories to a psychiatrist, a counselor, a parole officer, and others that he was involved in killing three different women. The parole officer contacted the police department. Donald S. Ortega, a police investigator who had been assigned to one of the murder cases involved, went to see appellant. Ortega met appellant and another officer at about 1:30 p.m. on April 21 at the halfway house.

Ortega first read appellant his *Miranda*[1] rights. Ortega testified that appellant appeared to be in good health, not under the influence of drugs or alcohol, was coherent, and appeared to understand his *Miranda* rights. Ortega stated that appellant did not ask for an attorney at that time, nor did he seek to terminate the interview. After a few minutes, Ortega realized that the information appellant was telling him would need to be corroborated by reviewing old police files. Appellant voluntarily agreed to accompany Ortega and the other police officer to headquarters for further discussion about appellant's stories.

The parties arrived at headquarters at about 2:00 p.m. Ortega again read appellant the *Miranda* warnings. Ortega stated that appellant indicated he understood his rights and that appellant did not ask for an attorney, nor did he ask for the interview to be terminated. Ortega then continued his interview, and although no suggestion was made by Ortega to appellant, appellant admitted to one of the murders and gave Ortega detailed information on this murder. The facts related by appellant to Ortega corroborated the information Ortega had gathered as a result of his investigation of this murder in 1982.

Appellant was arrested at about 3:00 p.m. and, when arrested, told Ortega that he thought that he was going to be arrested and that he would tell everything. Ortega then prepared a statement about this particular murder on a form which included

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

the *Miranda* warnings. After it was read to appellant, appellant made one correction and signed the statement. This statement was given at about 4:00 p.m.

Ortega continued to interview appellant, and he volunteered information regarding the murder of a second woman. Ortega had not been involved in that murder investigation and needed a period of time to locate the old file on the case. The facts given by appellant on this second murder were corroborated by this file. Appellant made a statement on this murder which Ortega again prepared on the form containing the *Miranda* warnings. The statement was read to appellant and signed by him at approximately 4:43 p.m.

Appellant then began discussing a third murder and agreed to give a written statement concerning his involvement in this offense. Following the same procedure, Ortega wrote out what appellant said on a form containing the *Miranda* warnings, and, after it was read to appellant, he signed the statement at about 5:46 p.m. Ortega reviewed the case file on the third murder and continued interviewing appellant. This additional interview resulted in a more detailed statement about the third murder. This statement was given at 8:08 p.m. Appellant was booked into jail at 9:36 p.m. and taken before a magistrate.

■ In his first point, appellant contends that the trial court erred in failing to suppress the confessions he made because of the failure of the arresting officer to take him before a magistrate without unnecessary delay. Appellant argues that the confessions were inadmissible because of the officer's violation of article 15.17 of the Texas Code of Criminal Procedure, which in part states:

In each case enumerated in this code, the person making the arrest shall without unnecessary delay take the person arrested ... before some magistrate of the county where the accused was arrested ... to provide ... the warnings described by this article....

TEX.CODE CRIM.PROC.ANN. art. 15.-17(a) (Vernon Supp.1988).[2]

Appellant further contends that Ortega, during cross-examination, admitted that magistrates were readily available and that his normal practice was not to take an arrested person before a magistrate until completion of an interrogation or a confession was secured. Appellant argues that the seven hours that transpired between the beginning of his interrogation and his being taken before a magistrate constituted unnecessary delay and that his confessions should not have been admitted.

In construing the predecessor of article 15.17,[3] which provided, "[i]n each case enumerated in this chapter, the person making the arrest shall immediately take the person arrested ... before the nearest magistrate," the Court of Criminal Appeals held that the failure of the arresting officer to carry an accused forthwith before a magistrate as required by article 217 does not in itself vitiate a confession. *See Smith v. State,* 171 Tex.Crim. 313, 350 S.W.2d 344, 347, *cert. denied,* 368 U.S. 883, 82 S.Ct. 126, 7 L.Ed.2d 83 (1961). The court stated the rule that the failure to carry an accused before a magistrate vitiates a confession only when there is some causal connection between such failure and the making of the confession. *Smith,* 350 S.W.2d at 347; *see also Von Byrd v. State,* 569 S.W. 2d 883, 893–94 (Tex.Crim.App.1978), *cert. denied,* 441 U.S. 967, 99 S.Ct. 2418, 60 L.Ed.2d 1073 (1979). The burden is upon an appellant to show that the delay was unreasonable and to show the causal connection between the confession and the failure to take him before a magistrate without unreasonable delay. *See Wagner v. State,* 687 S.W.2d 303, 307 (Tex.Crim.App. 1984).

Accordingly, the threshold question is whether the delay in taking appellant be-

---

**2.** Article 14.06 of the Texas Code of Criminal Procedure also requires the person making the arrest to take the arrested person before a magistrate without unnecessary delay where the arrest occurs without a warrant.

**3.** TEX.CODE CRIM.PROC. art. 217 (1925) (repealed 1965).

fore a magistrate in this case was "an unnecessary delay." What is a reasonable time depends upon the facts of each case and varies with the circumstances of that particular case. *See Gilbert v. State,* 162 Tex.Crim. 290, 284 S.W.2d 906, 907 (1955). The length of detention must be considered along with other matters such as accessibility of the magistrate, the facilities involved, the unavoidable administrative duties of the officers making the arrest, the intervention of a Sunday or holiday, the physical or mental condition of the person detained, a delay occasioned by the voluntary act of the accused freeing himself of the burden of guilt, and the time spent in further inquiry and investigation to corroborate the statements made by an accused. *See Gilbert,* 284 S.W.2d at 907; *United States v. Brown,* 459 F.2d 319, 325 (5th Cir.1971), *cert. denied,* 409 U.S. 864, 93 S.Ct. 155, 34 L.Ed.2d 111 (1972); *see also United States v. Leviton,* 193 F.2d 848, 853 (2d Cir.1951), *cert. denied,* 343 U.S. 946, 72 S.Ct. 860, 96 L.Ed. 1350 (1952); *Sanders v. City of Houston,* 543 F.Supp. 694, 705 (S.D.Tex. 1982), *aff'd,* 741 F.2d 1379 (5th Cir.1984).

Our review of Texas cases that discuss the issue of an acceptable period of detention reveals approval of durations ranging from one and one-half hours to fifteen hours.[4]

Other facts and circumstances in the record reflect, prior to Ortega beginning his interrogation of appellant, that appellant had told his stories about the murders to a number of other people including his parole officer and a psychiatrist. There is no evidence of any police pressure, duress, coercion, or physical abuse. In fact, the record reflects that appellant appeared to be very relaxed during the interview at headquarters and amused himself by reading and working crossword puzzles. Also,

because of the time lapse between the murders and appellant's detention, it was necessary for Ortega and others to spend time in locating and researching files to corroborate the details of appellant's confessions.

The record reflects that appellant corroborated everything that Ortega had testified about at the suppression hearing, except that appellant claimed he had asked for an attorney but was ignored. The judge at a suppression hearing is the sole judge of the weight and credibility of the witnesses. He may choose to believe or disbelieve all or any part of any witnesses' testimony. *See Williams v. State,* 692 S.W.2d 671, 676 (Tex.Crim.App.1984); *Waller v. State,* 648 S.W.2d 308, 311 (Tex.Crim.App.1983).

We conclude that the totality of the circumstances demonstrates the delay in taking appellant before a magistrate was in the first instance not an unnecessary delay, and in the second instance was not in any way causally connected to appellant's confessions. *See Williams,* 692 S.W.2d at 676; *Smith,* 350 S.W.2d at 347; *Gilbert,* 284 S.W.2d at 908. We overrule appellant's first point.

■ In his second point, appellant contends that the trial court erred in failing to suppress his confessions because they were the fruit of an illegal arrest. The record reflects that this ground was not asserted by appellant in his formal motion to suppress, nor was that objection made by appellant during the suppression hearing nor during the trial on the merits. Appellant has failed to preserve error because the claim was not asserted in the trial court. TEX.R.APP.P. 52(a); *Rogers v. State,* 640 S.W.2d 248, 264 (Tex.Crim.App.1982) (op. on reh'g); *see also Esquivel v. State,* 595 S.W.2d 516, 524 (Tex.Crim.App.), *cert. denied,* 449 U.S. 986, 101 S.Ct. 408, 66 L.Ed.

---

4. *Gilbert v. State,* 166 Tex.Crim. 290, 284 S.W.2d 906 (1955); *Mitchell v. State,* 166 Tex.Crim. 197, 312 S.W.2d 245 (1958); *Childress v. State,* 166 Tex.Crim. 95, 312 S.W.2d 247 (1958); *Smith v. State,* 171 Tex.Crim. 313, 350 S.W.2d 344, *cert. denied,* 368 U.S. 883, 82 S.Ct. 126, 7 L.Ed.2d 83 (1961); *Creswell v. State,* 387 S.W.2d 887 (Tex. Crim.App.), *cert. denied,* 382 U.S. 866, 86 S.Ct. 137, 15 L.Ed.2d 105 (1965); *Johnston v. State,* 396 S.W.2d 404 (Tex.Crim.App.1965), *cert. de-* *nied,* 384 U.S. 1024, 86 S.Ct. 1976, 16 L.Ed.2d 1029 (1966); *Young v. State,* 398 S.W.2d 572 (Tex.Crim.App.1965); *Hester v. State,* 544 S.W.2d 129 (Tex.Crim.App.1976); *Myre v. State,* 545 S.W.2d 820 (Tex.Crim.App.1977); *De la Rosa v. State,* 658 S.W.2d 162 (Tex.Crim.App.), *cert. denied,* 464 U.S. 865, 104 S.Ct. 201, 78 L.Ed.2d 175 (1983); *Williams v. State,* 692 S.W.2d 671 (Tex.Crim.App.1984).

2d 251 (1980). Appellant's second point is overruled.

The trial court's judgments are affirmed.