Vicente Rocha ONTIVEROS, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–92–00367–CR.

Court of Appeals of Texas,
El Paso.

Dec. 22, 1994.

David C. Guaderrama, El Paso County Public Defender, El Paso, for appellant.

Jaime E. Esparza, Dist. Atty., El Paso, for state.

Before KOEHLER, LARSEN and McCOLLUM, JJ.

## SUBSTITUTED OPINION ON MOTION FOR REHEARING

KOEHLER, Justice.

The opinion dated August 31, 1994 is withdrawn and the following opinion is substituted in its place. State's Motion for Rehearing is overruled.

Vicente Rocha Ontiveros, Appellant, appeals from convictions for the offenses of aggravated sexual assault of a child and aggravated kidnapping. Upon jury findings of guilt for each offense, the jury assessed punishment at imprisonment for terms of 25 years on the aggravated sexual assault of a child charge and 10 years on the aggravated kidnapping charge, the sentences to run concurrently. We affirm.

### THE FACTS

The record reflects that on May 12, 1991, the fifteen-year-old victim was kidnapped and raped. At trial, she testified that on that night, she and her boyfriend, Robert Rosales, had parked her Oldsmobile Cutlass in a secluded area in El Paso, Texas, and were engaged in sexual intercourse when three men attacked the couple. The victim identified Vicente Ontiveros, the Appellant in this cause, and Pedro Diaz, his co-defendant, as two of the three men who attacked and raped her that night.

She described how the men entered her car and while Ontiveros and another man began beating Rosales, Diaz threw her into the backseat of her car, hitting her and biting her breast, lip, and arm. After Rosales passed out, the men drove the victim's car to a bridge and dumped Rosales behind a bush, while Diaz held her captive in the backseat of the car. Afterwards, the three men took the victim to a spot near Rosedale Street in El Paso and took turns raping her. The men then drove around El Paso some more before stopping in another location to assault her further. Finally the men crossed over into Juarez, Mexico, where they picked up two more of their friends before dropping the victim off at a bus stop. They kept her car. She took a bus to the bridge and crossed back into the United States, where she reported the assault to the El Paso Police and was taken to a hospital for treatment.

Ontiveros and Diaz were arrested on May 19, 1991, when El Paso Police organized a stakeout of the secluded place where the victim and her boyfriend were attacked.[1] Sergeant Perez, the commanding officer at the stakeout scene, testified at the suppression hearing that the stakeout consisted of two undercover officers in a decoy vehicle, five or six other officers observing from nearby, and two officers in a marked police vehicle waiting in the general vicinity. About 12:15 a.m., the police observed four Mexican males approach the decoy vehicle via the irrigation ditch and crawl on their bellies to peer over the ditch's embankment, as if to determine whether there was anyone in the decoy vehicle. The men retreated back down into the irrigation ditch and surfaced a sec-

---

1. Three or four sexual assaults had taken place in this area within a short period of time. The secluded area consisted of a vacant lot in the 8700 block of Winchester, which is bordered on one side by an irrigation ditch.

ond time approximately fifteen or twenty feet from the decoy car before another vehicle (unrelated to the stakeout) entering the secluded area scared off the four men. At that point, the men retreated down the ditch, which was muddy from a recent rain, and walked across an open field toward a 7–Eleven store located at 8701 Alameda. Perez radioed the marked unit and told the officers in that unit to stop the four men and check them for identification.

Officers Chinolla and Jimenez, the police officers in the marked unit, pulled up to the four men and ordered them to stop. Rather than obeying the police, the four men turned and darted briskly into the 7–Eleven store. Officer Chinolla followed the men, roused them out of the store, and made them kneel on the sidewalk with their hands behind their heads, where he and Officer Jimenez patted the men down for weapons. About the time the officers completed the pat-down, Francisco Alderette, the store clerk, brought out a handgun that one of the four men had concealed behind some boxes of Jello. Sergeant Perez, who had left his stakeout spot behind the bushes and beat a hasty path to the 7–Eleven, ordered the four men arrested at that point. The police officers contended that the four men were not placed under arrest until Alderette brought the weapon to the officers' attention. At the conclusion of the suppression hearing, the trial court ruled that the confession was admissible since the arrest in connection with the weapons was legal.

### MOTION TO SUPPRESS

In his first three points of error, Ontiveros contends that the trial court erred in overruling his motion to suppress illegally obtained evidence because: (1) when the police initially seized him, there were insufficient articulable facts to warrant a reasonable belief that he was engaged in criminal activity; (2) he was arrested without probable cause to believe he had committed a crime; and (3) he was arrested without any probable cause or suspicion particularized as to him. Ontiveros attempted to suppress his confession on the

ground that the confession was the fruit of the poisonous tree, tainted by an unlawful initial stop and subsequent arrest.

 The trial judge is the sole and exclusive trier of facts at a hearing on a motion to suppress. *Romero v. State,* 800 S.W.2d 539, 543 (Tex.Crim.App.1990); *Hawkins v. State,* 628 S.W.2d 71 (Tex.Crim.App.1982); *Green v. State,* 615 S.W.2d 700, 708 (Tex. Crim.App.), cert. denied, 454 U.S. 952, 102 S.Ct. 490, 70 L.Ed.2d 258 (1981). Thus, it is for the trial judge to decide issues of fact concerning the voluntariness of a defendant's confession. *Dykes v. State,* 657 S.W.2d 796 (Tex.Crim.App.1983). On appeal, the appellate court does not engage in its own factual review, but decides whether the record supports the trial judge's fact findings. *Romero,* 800 S.W.2d at 543.

 When a defendant seeks to suppress evidence on the basis of a Fourth Amendment violation, the burden of proof is initially on the defendant. *Russell v. State,* 717 S.W.2d 7, 9 (Tex.Crim.App.1986); *Mattei v. State,* 455 S.W.2d 761, 765–66 (Tex.Crim. App.1970); see also *State v. Wood,* 828 S.W.2d 471, 474 (Tex.App.—El Paso 1992, no pet.). A defendant moving to suppress evidence must produce evidence that defeats the presumption of proper police conduct and therefore shifts the burden of proof to the State. *Russell,* 717 S.W.2d at 9; *Mattei,* 455 S.W.2d at 765–66, relying upon *United States v. Thompson,* 421 F.2d 373, 377 (5th Cir. 1970) and *Rogers v. United States,* 330 F.2d 535 (5th Cir.), cert. denied, 379 U.S. 916, 85 S.Ct. 265, 13 L.Ed.2d 186 (1964). Cf. *United States v. Bachner,* 706 F.2d 1121, 1125–26 (11th Cir.1983). Once a defendant has established (1) that a search or seizure occurred and (2) that the search or seizure occurred without a warrant or without valid consent, the burden of proof shifts to the State to produce either evidence of a warrant or to prove the reasonableness of the search or seizure pursuant to one of the recognized exceptions to the warrant requirement. *Wood,* 828 S.W.2d at 475. In the present cause, there is no contention that the State

had a warrant for Ontiveros' arrest or for the search that followed, nor does the State claim that these activities occurred with Ontiveros' consent. Without a warrant, the State carries the burden of establishing the validity of the arrest. *Stull v. State*, 772 S.W.2d 449, 453 (Tex.Crim.App.1989); *Russell*, 717 S.W.2d at 10.

The parties to this cause contest the exact point in time when Ontiveros was placed under arrest by the police. Ontiveros argues that he was arrested when he was brought out of the convenience store, forced to his knees with his hands behind his head, and searched. The State's position is that the officers were merely conducting a *Terry* stop at this point, patting Ontiveros and his co-defendants down for weapons. The State relies upon the fact that Ontiveros was not handcuffed and had not been told he was under arrest at this point, as well as the officers' testimony that they had not yet arrested Ontiveros. According to the State, the arrest occurred after Alderette came out of the convenience store with a gun belonging to Ontiveros or one of his co-defendants, at which time Ontiveros and his co-defendants were arrested for unlawfully carrying a weapon. The trial court apparently agreed with the State's reasoning, since the trial judge specified that he denied Ontiveros' motion to suppress because he found that the arrest in connection with the weapons was legal. While we do not agree with this reasoning, we will sustain the trial judge's decision if it is correct on any theory of law applicable to the case. See *Romero*, 800 S.W.2d at 543.

 The threshold issue is whether Ontiveros was subjected to an investigative detention or an arrest at the point where he was forced to his knees in front of the convenience store.[2] An arrest occurs when a person's liberty of movement is restricted or

restrained. *Burkes v. State*, 830 S.W.2d.922, 925 (Tex.Crim.App.1991); *Amores v. State*, 816 S.W.2d 407, 412 (Tex.Crim.App.1991); *Hoag v. State*, 728 S.W.2d 375, 379 (Tex. Crim.App.1987). "A person is arrested when he has been actually placed under restraint or taken into custody by an officer or person executing a warrant of arrest, or by an officer or person arresting without a warrant." TEX.CODE CRIM.PROC.ANN. art. 15.22 (Vernon 1977); *Hoag*, 728 S.W.2d at 379. Here, the police officers, upon bringing Ontiveros out of the convenience store, ordered him to his knees with his hands behind his head and searched him. Other than requesting identification, Officers Chinolla and Jimenez asked no further investigatory questions of Ontiveros. And according to Francisco Alderette, the store clerk, Ontiveros and his co-defendants were handcuffed by the time Alderette found the handgun in the store and brought it out to the police. Given these facts, we find that Ontiveros was "placed under restraint" within the meaning of Article 15.22 and, thus, the initial detention constituted a warrantless arrest.

The next issue is whether the warrantless arrest was supported by probable cause. In Texas, warrantless arrests are authorized in limited circumstances governed primarily by Chapter Fourteen of the Code of Criminal Procedure. See *Amores*, 816 S.W.2d at 412 (discussing the various Chapter Fourteen warrantless arrest provisions). Article 14.03(a)(1) authorizes a warrantless arrest of "persons found in suspicious places and under circumstances which reasonably show that such persons have been guilty of some felony." TEX.CODE CRIM.PROC.ANN. art. 14.03(a)(1) (Vernon Supp.1994).

 The State has the burden to prove the existence of probable cause to justify a warrantless arrest or search. *Torres v. State*, 868 S.W.2d 798, 801 (Tex.Crim.App.

---

2. The nature of the detention determines the constitutional parameters which apply to determine its legality. To be constitutionally valid, an investigative detention may rest upon a reasonable, articulable suspicion that the person detained is connected with criminal activity; but for an arrest to pass constitutional muster, it must be supported by the greater conclusiveness of probable cause to believe that a particular person has committed or is committing an offense. *Amores v. State*, 816 S.W.2d 407, 412 (Tex.Crim.App.1991).

1993). In Texas, the courts look at the "totality of the circumstances" for determining probable cause for a warrantless search and seizure. *Id.; Eisenhauer v. State,* 754 S.W.2d 159 (Tex.Crim.App.1988), cert. denied, 488 U.S. 848, 109 S.Ct. 127, 102 L.Ed.2d 101 (1988). Probable cause exists where the facts and circumstances within the officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that a particular person has committed or is committing an offense. *Torres,* 868 S.W.2d at 801; *Amores,* 816 S.W.2d at 413; *Woodward v. State,* 668 S.W.2d 337 (Tex.Crim.App.1982) (opinion on rehearing), cert. denied, 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 952 (1985). In reviewing a warrantless arrest to determine the existence of probable cause, we look to the facts known to the officers at the time of the arrest. *Torres,* 868 S.W.2d at 801.

■ The facts known to the officers at the time of Ontiveros' arrest were as follows: (1) the police had set up a surveillance in this particular vacant lot because several sexual episodes of assault/kidnapping/robbery following a similar pattern had occurred at that location; (2) Ontiveros and his co-defendants behaved in a suspicious manner by walking down a muddy irrigation ditch and crawling on their bellies over the ditch embankment to observe the decoy vehicle; (3) Ontiveros and his co-defendants matched the composites and their actions fit with the officers's knowledge of how the perpetrators generally operated. Although Ontiveros argues that it is "peculiar but not a crime to walk up the ditch," we note that the Court of Criminal Appeals has sanctioned warrantless arrests in instances where the personally-observed behavior, though not overtly criminal, is sufficient when coupled with the officer's prior knowledge to establish probable cause. *Stull,* 772 S.W.2d at 451–52.

In this case, we agree that Ontiveros' actions in walking down a muddy irrigation ditch and crawling on his belly over the ditch embankment near the decoy car were rightly perceived by the officers conducting the surveillance as out of the ordinary, suspicious, and likely to tie Ontiveros to a criminal act. We conclude that probable cause existed for his arrest, and that the trial court rightly denied the motion to suppress. We overrule Points of Error Nos. One, Two, and Three.

## NEUTRAL AND DETACHED FACT FINDER

In his fourth point of error, Ontiveros contends that the trial court erred when it abandoned its position as a neutral and detached factfinder during the course of the pretrial suppression hearing. He argues that the trial judge repeatedly interjected himself as a litigant in the suppression hearing, asking leading questions calculated to buttress and solidify the State's position, and suggesting to witnesses the answers needed to provide the foundation for overruling Ontiveros' motion to suppress.

■ Although Ontiveros cites several instances in which he believes the trial judge abandoned his neutral and detached position, the record reflects that his defense counsel made no objections to these matters at the suppression hearing. In order to preserve a complaint for appellate review, the complaining party must make a timely, specific objection at the earliest possible opportunity and obtain an adverse ruling on the objection. Tex.R.App.P. 52(a); *Turner v. State,* 805 S.W.2d 423, 431 (Tex.Crim.App.1991), cert. denied, 502 U.S. 870, 112 S.Ct. 202, 116 L.Ed.2d 162 (1991). Even constitutional errors may be waived by the failure to object at trial. *Briggs v. State,* 789 S.W.2d 918, 924 (Tex.Crim.App.1990). We overrule Point of Error No. Four.

## THEORY OF PARTIES

In his fifth point of error, Ontiveros contends that the evidence was insufficient to convict him of aggravated sexual assault since the court's charge did not authorize conviction under the theory of parties. The application paragraph of the charge reads as follows:

Therefore, if you believe from the evidence beyond a reasonable doubt that the defendant, VICENTE ROCHA ONTIVEROS, did, in El Paso County, Texas, on or about the 12th day of May 1991, unlawfully, intentionally or knowingly cause the penetration of the female sexual organ of J._____ T., a child, by means of the penis of VICENTE ROCHA ONTIVEROS, and the said VICENTE ROCHA ONTIVEROS did then and there intentionally or knowingly, by acts or words, *place J._____ T. in fear that serious bodily injury or death would be imminently inflicted upon the said J._____ T.,* then you will find the defendant, VICENTE ROCHA ONTIVEROS, guilty of the offense of aggravated sexual assault as charged in the indictment. [Emphasis added.]

The charge elsewhere included an abstract instruction on the law of parties.

Ontiveros argues that it was his co-defendant Diaz, and not he, who placed the victim in fear of serious bodily injury or death. Since the law of parties is defined abstractly in a section of the jury charge separate from the application paragraph, Ontiveros contends that the jury charge does not authorize his conviction under the theory of parties. He cites *Garrett v. State,* 749 S.W.2d 784, 802–03 (Tex.Crim.App.1986), for the proposition that "the application paragraph of the jury charge is that which authorizes conviction, and an abstract charge on a theory of law which is not applied to the facts is insufficient to bring that theory before the jury."

The State concedes that it was proceeding on a party theory in arguing that Ontiveros placed the victim in fear of serious bodily injury or death, and that Ontiveros is guilty of threats to the victim only as a party. The State argues that *Garrett* was inappropriately decided and should be limited to the facts of that case, although a review of the case law indicates that the Court of Criminal Appeals has already applied the theories espoused in *Garrett* to other situations. See e.g., *Jones v. State,* 815 S.W.2d 667, 669 (Tex.Crim.App.1991); *Biggins v. State,* 824 S.W.2d 179, 180 (Tex.Crim.App.1992). The State further contends that it would be fundamentally unfair for Ontiveros, whose rape conviction is clearly supported by the evidence, to obtain a reversal simply because the facts show he is guilty of threatening the victim only as a party.

In *Garrett,* while stating that the sufficiency of the evidence must be measured against the jury charge, which the Court interpreted to mean as "the entire charge," the Court of Criminal Appeals nonetheless held that the mere inclusion of an abstract definition of the theory of transferred intent was not sufficient to bring that theory before the jury. *Garrett,* 749 S.W.2d at 802–03. Later, in *Jones,* 815 S.W.2d at 669, the Court held that in order for the jury to be authorized to convict an individual as a party, the law of parties must be included in the application paragraph of the charge. Under the facts of *Jones,* the evidence established that it was not Jones, but the co-defendant, who used or exhibited a deadly weapon during a robbery. Since the only theory under which Jones could be found guilty of *aggravated* robbery was under the theory of parties, but the charge did not authorize conviction on a parties theory, the Court concluded that the evidence was insufficient to demonstrate that Jones was guilty of aggravated robbery in a non-parties capacity. Consequently, Jones was acquitted. Again in *Biggins,* 824 S.W.2d at 180, the Court of Criminal Appeals acquitted a defendant convicted as a party of unlawful delivery of controlled substance, holding that the law of parties had to be incorporated within the application paragraph which authorized the jury's verdict.

■■■■■ Since the law of parties was not included in the application paragraph in the present cause, we must determine whether the evidence is sufficient to find Ontiveros guilty of aggravated rape by his own conduct. See *Jones,* 815 S.W.2d at 669. In reviewing the sufficiency of the evidence to support a criminal conviction, we are constrained to view all the evidence in a light most favorable to the verdict to determine whether any ra-

tional trier of fact could find the essential elements of the crime as alleged beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Rodriguez v. State,* 819 S.W.2d 871, 872 (Tex.Crim.App.1991); *Enriquez v. State,* 826 S.W.2d 191 (Tex.App.—El Paso 1992, no pet.). Our role is not to ascertain whether the evidence establishes guilt beyond a reasonable doubt. *Stoker v. State,* 788 S.W.2d 1, 6 (Tex.Crim.App.1989), cert. denied, 498 U.S. 951, 111 S.Ct. 371, 112 L.Ed.2d 333 (1990). Nor do we resolve any conflict of fact or assign credibility to the witnesses as it was the function of the trier of fact to accept or reject any, part, or all of any witness's testimony. See *Adelman v. State,* 828 S.W.2d 418, 421 (Tex.Crim.App. 1992); *Matson v. State,* 819 S.W.2d 839, 843 (Tex.Crim.App.1991). Instead, an appellate court's duty is only to determine if both the explicit and implicit findings of the trier of fact are rational by viewing all the evidence admitted at trial in a light most favorable to the verdict. *Adelman,* 828 S.W.2d at 421–22. In so doing, any inconsistencies in the evidence are resolved in favor of the verdict. *Matson,* 819 S.W.2d at 843, quoting *Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Crim.App. 1988).

█ In cases involving aggravated sexual assault allegations there is a further sufficiency analysis. In *Douglas v. State,* 740 S.W.2d 890, 891–92 (Tex.App.—El Paso 1987, no pet.), this Court held:

Under former Section 21.03(a)(2) the focus was exclusively upon the physical and verbal conduct of the accused and whether it amounted to a threat of imminent infliction of death or serious bodily injury. Under the phrasing of Section 22.021(a)(2), the necessary element is the victim's state of fear of imminent infliction of death or serious bodily injury due to the defendant's acts or words. This is a very real and very significant change. Now the jury is mandated to assess first if that state of fear in fact existed. Normally, such proof will come from the victim's testimony. The defendant's conduct is then assessed to determine if it was the producing cause of such fear and whether the subjective state of fear was reasonable in light of such conduct. This legislative shift in focus, coupled with the established evidentiary review doctrine of assessing the evidence in a light most favorable to the verdict, of course places would-be sexual assailants in greater jeopardy of aggravated convictions. It is not simply an objective test of their conduct which is currently controlling, but rather the reasonableness of their victim's subjective responsive fears which will determine the degree of offense. The true tenor of the change mandated by Section 22.021(a)(2) was touched upon by the Amarillo Court of Appeals in *Dacquisto [v. State],* 721 S.W.2d [603,] at 604:

Thus, if the aggravating element exists, it must come primarily from the nature of appellant's acts and the depth of his victim's fear.

To the extent they are entitled, individuals such as Appellant are insulated from aggravated conviction upon extreme and irrational subjective fear by the victim through the requirements of causation and reasonableness of the victim's subjective anticipation of imminent death or serious bodily injury. Further consideration for such actors is neither warranted nor provided by the current penal provisions.

The jury may consider the actor's objective conduct, his acts, words, or deeds and then infer from the totality of the circumstances whether or not his overall conduct placed the complainant in fear of serious bodily injury. *Grunsfeld v. State,* 813 S.W.2d 158, 162 (Tex. App.—Dallas 1991), aff'd, 843 S.W.2d 521 (Tex.Crim.App.1992). It is also not necessary to demonstrate that the accused could have inflicted serious bodily injury. *Id.* It is not necessary that a threat or being placed in a state of fear be communicated verbally. *Elkins v. State,* 822 S.W.2d 780, 783 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd). Whether or not a victim was placed in fear of death or serious bodily injury is a fact to be determined by the jury. *Id.*

█ Turning to the record before us, the evidence at trial revealed that the fifteen

year old victim was parked in her two-door car having sexual intercourse with her boyfriend, Robert Rosales when she was accosted by the appellant and the two co-defendants. The appellant and co-defendant Andasola attacked the boyfriend, beat him unconscious, and threw the victim into the back seat of the car. Co-defendant Diaz got in with the victim. The Appellant drove the car. Andasola was in front with the unconscious boyfriend.

Diaz hit the victim with his fist and bit her on the lip and breast. Andasola told Diaz to hold the victim and the Appellant stopped the car. Andasola threw the unconscious boyfriend out of the car and Appellant drove off. He then stopped the car again and the three discussed who would first sexually assault the victim. Andasola got in back and told the victim to lie down and he raped her. The victim complied because she did not want to be hurt and she knew she could not resist. Then the Appellant told the victim to lie down and she complied due to her fears. She was again raped.

Diaz tried to rape the victim but was unsuccessful. They drove off and got some gasoline and after another unsuccessful attempt on Diaz's part to have intercourse, they drove into Mexico and released the victim. Upon her return to the United States, she reported the incident, which lasted about four hours, to the police.

During the course of this incident, the Appellant told Diaz not to hit the complainant.[3] Andasola told the victim that she was lucky that Appellant was present or she would have been hurt more.

The police officer who saw the victim right after she reported the incident stated that she was in shock and photos of her were admitted into evidence showing bruises and bleeding from her lip and breast.

In his written confession, Appellant admitted to sexually assaulting the victim and the attack on her boyfriend.

Given these circumstances and the above-cited authority, we find sufficient evidence to support the conviction for aggravated sexual assault. See *Wilkerson v. State,* 766 S.W.2d 795, 797–98 (Tex.App.—Tyler 1987, pet. ref'd), *Dacquisto v. State,* 721 S.W.2d 603, 604–05 (Tex.App.—Amarillo 1986, pet. ref'd). We overrule Point of Error No. Five.

## UNNECESSARY DELAY IN BEING TAKEN BEFORE A MAGISTRATE

In his sixth point of error, Ontiveros contends that the trial court erred in admitting the confession he made because the arresting officer failed to take him to a magistrate without unnecessary delay. Ontiveros relies upon Articles 14.06 and 15.17 of the Texas Code of Criminal Procedure, which require the officer making a warrantless arrest to take the person arrested before a magistrate "without unnecessary delay." Tex.Code Crim.Proc.Ann. art. 14.06 and 15.17(a) (Vernon & Supp.1994).

Although an arrestee should be taken before a magistrate without "unnecessary delay," it is well settled that the failure to take an arrestee before a magistrate in a timely manner will not invalidate a confession unless there is proof of a causal connection between the delay and the confession. *Cantu v. State,* 842 S.W.2d 667, 679 (Tex.Crim. App.1992), cert. denied, —— U.S. ——, 113 S.Ct. 3046, 125 L.Ed.2d 731 (1993); *Boyd v. State,* 811 S.W.2d 105 (Tex.Crim.App.1991), cert. denied, 502 U.S. 971, 112 S.Ct. 448, 116 L.Ed.2d 466 (1991). Further, an unreasonable delay in presenting an arrestee before a magistrate will not vitiate an otherwise voluntary confession if the arrestee was properly advised of his or her *Miranda* rights. *Cantu,* 842 S.W.2d at 679. The defendant has the burden to show the delay was unreasonable, and to show the causal connection between the confession and the failure to take him before a magistrate without unrea-

3. There is evidence in the record that this statement was made to keep the victim from yelling too much.

sonable delay. *Wagner v. State,* 687 S.W.2d 303, 307 (Tex.Crim.App.1984); *Niehouse v. State,* 761 S.W.2d 491, 493 (Tex.App.—Dallas 1988, no pet.).

In resolving this point of error, the threshold question is whether the delay in taking Ontiveros before a magistrate in this case was an "unnecessary delay." What constitutes a reasonable time depends upon the facts of each case and varies with the circumstances of that particular case,[4] but the Texas courts have approved detentions spanning a wide range of durations.[5]

■ The record in the present cause reflects that Ontiveros was arrested and taken to the East Valley Substation in El Paso some time after 1 a.m. on May 19, 1991. Detective Joe Villa, the police officer who had been investigating the assault on the victim, arrived at the substation around 2 a.m. Upon meeting Diaz and Ontiveros, Villa informed them that they were suspects in a sexual assault case and advised them of their *Miranda* rights. According to Villa, both men admitted involvement in the assault and agreed to give statements. Villa then transported the men to the Crimes Against Persons office, where after advising them again of their *Miranda* rights, Villa took Ontiveros' statement at approximately 6:15 a.m.[6] Next, Ontiveros and Diaz were taken before the magistrate where they were given warnings for the third time before being booked at the county jail. Villa's testimony

reflects that Ontiveros and Diaz were taken before the magistrate at approximately 8 a.m. Thus, the men were detained for approximately seven hours before being taken before a magistrate. The record is silent as to whether the magistrate was on duty or available before 8 a.m. on that day. Based on the foregoing, and noting that of those seven hours of detention, several hours were spent transporting Ontiveros, taking his statement, and attending to other administrative matters, we find that Ontiveros' detention did not constitute an "unnecessary delay" under Articles 14.06 and 15.17.

■ We further conclude that Ontiveros did not demonstrate that his confession was causally connected to the seven hour delay in being taken before the magistrate. Ontiveros argues that because he is a Mexican citizen and his nation does not provide the same constitutional protections as does the United States, he anticipated he would be questioned relentlessly until he gave Villa a statement. But this speculative argument clashes with Villa's testimony that immediately upon meeting Ontiveros, Villa advised him of his *Miranda* rights and Ontiveros soon thereafter agreed to give a statement. Other than noting that he was handcuffed during his detention, Ontiveros makes no claim of any police pressure, duress, coercion, or physical abuse. As Villa's testimony reflects, Ontiveros was given his *Miranda* warnings twice before he gave a statement. There is no indication from the record that

4. The Court in *Niehouse* cited the following factors to consider: (1) the length of detention, (2) the accessibility of the magistrate, (3) the facilities involved, (4) the unavoidable administrative duties of the officers making the arrest, (5) the intervention of a Sunday or holiday, (6) the physical or mental condition of the person detained, (7) a delay occasioned by the voluntary act of the accused freeing himself of the burden of guilt, and (8) the time spent in further inquiry and investigation to corroborate the statements made by an accused. *Niehouse,* 761 S.W.2d at 493; see also *Sanders v. City of Houston,* 543 F.Supp. 694, 705 (S.D.Tex.1982), aff'd, 741 F.2d 1379 (5th Cir.1984).

5. The *Niehouse* Court conducted a survey and reported that Texas courts have approved durations of detention ranging from one and one-half hours to fifteen hours. *Niehouse v. State,* 761

S.W.2d 491, 493 (Tex.App.—Dallas 1988, no pet.). And in *Bonner v. State,* 804 S.W.2d 580, 581–82 (Tex.App.—Houston [1st Dist.] 1991, pet. ref'd), the Court of Appeals upheld the admissibility of confession given after Bonner had been held in custody in excess of twenty-four hours before being taken before the magistrate. The United States Supreme Court has held that, as a general rule, a forty-eight hour detention without presentment in front of a neutral magistrate is not an "unnecessary delay" as a matter of constitutional law. *County of Riverside v. McLaughlin,* 500 U.S. 44, 46, 111 S.Ct. 1661, 1665, 114 L.Ed.2d 49 (1991).

6. Diaz gave a statement on May 20, the following day.

Ontiveros did anything other than volunteer his confession to Villa. Finding no "unnecessary delay" and no proof of a causal connection between the delay and the confession, we overrule Ontiveros' sixth point of error.

### REFUSAL TO GIVE REQUESTED JURY CHARGE

In his seventh point of error, Ontiveros contends that the trial court erred in denying his requested jury charge on the issue of unnecessary delay in being taken before the magistrate. Ontiveros wanted to include in the jury charge a phrase requesting the jurors not to consider his statement unless they found he was taken before a magistrate without unnecessary delay. He argues that because the evidence raised this issue, he was entitled to have it submitted to the jury.

The State responds that the present cause is similar to the facts of *De La Rosa v. State,* 658 S.W.2d 162 (Tex.Crim.App.1983). In that case, the jury was charged on the admissibility of the confession under Texas Code of Criminal Procedure, Article 38.22, but the trial court refused to submit a charge under Article 15.17. The Court of Criminal Appeals held that the trial court correctly refused the Article 15.17 charge since no evidence before the jury raised an issue that the confession was causally connected to any unreasonable delay. *Id.* at 166–67. See also *Sallings v. State,* 789 S.W.2d 408, 418 (Tex. App.—Dallas 1990, pet. ref'd).

■ The jury in the present cause was charged on the voluntariness of Ontiveros' confession, but the trial court refused an instruction regarding undue delay in being taken before the magistrate. As discussed in the previous point of error, Ontiveros failed to establish that his confession was connected to any unreasonable delay in being taken before a magistrate. Where no evidence before the jury raises the issue that the defendant's confession was causally connected to an unreasonable delay in being taken before a magistrate, no jury instruction is required on this issue. *De La Rosa,* 658 S.W.2d at 166–67; *Sallings,* 789 S.W.2d at 418. We overrule Point of Error No. Seven.

### INSUFFICIENT EVIDENCE

In his eighth point of error, Ontiveros contends that the evidence was insufficient to support his conviction for aggravated kidnapping since the State failed to prove that Mexico is a place where the victim was not likely to be found. The court's charge instructed the jurors to find Ontiveros guilty of aggravated kidnapping only if they found that he abducted the victim "by secreting or holding the said J._____ T. in a place where she was not likely to be found, to-wit: Mexico . . . ." Ontiveros readily acknowledges that after sexually abusing the victim, he and his co-defendants took her into Juarez, Mexico. But Ontiveros argues that the record indicates that she was quite likely to be found in Mexico given that she was only there a brief time and she was eventually dropped off at a bus stop and given bus fare. We cannot agree.

■ A person commits the offense of kidnapping if he intentionally or knowingly abducts another person. Tex.Penal Code Ann. § 20.03(a) (Vernon 1994). "Abduct" means to restrain a person with intent to prevent his or her liberation by: (a) secreting or holding the individual in a place where he or she is not likely to be found; or (b) using or threatening to use deadly force. Tex.Penal Code Ann. § 20.01(2) (Vernon 1994).

■ The victim testified that when her abductors took her into Mexico, they first drove to a location where they picked up two other friends and Diaz offered them the chance to have sexual intercourse with her. It was only after Ontiveros and his co-defendants picked up these additional passengers that they drove the victim to a bus stop and dropped her off. Abduction does not require that the victim be held for any certain length of time. *Sanders v. State,* 605 S.W.2d 612, 614 (Tex.Crim.App.1980). In *Sanders,* the defendant's abduction of the victim for approximately an hour was held sufficient. In the present cause, it is of no consequence that the victim's attackers kept her in the United States for most of the time they were restraining her or that she was eventually

dropped off at a place where she was able to find help. The "secreting or holding [her] in a place where she was not likely to be found" element of the jury instructions was proven. We conclude that this evidence was sufficient to support a rational trier of fact's finding that a kidnapping had been committed. We overrule Point of Error No. Eight.

### SUPPLEMENTAL POINT OF ERROR

Finally, in a supplemental brief, Ontiveros raises a point of error not raised in the original brief, and does so without obtaining leave of court to raise a new point of error. Points of error raised by an appellant in a supplemental brief which were not raised in the original brief are not properly presented for appellate review. *Coleman v. State,* 632 S.W.2d 616, 619 (Tex.Crim.App.1982); *Berrios–Torres v. State,* 802 S.W.2d 91, 95 (Tex.App.–Austin 1990, no pet.); *Emerson v. State,* 756 S.W.2d 364, 370 (Tex.App.—Houston [14th Dist.] 1988, pet. ref'd). We overrule this supplemental point of error.

### DISPOSITION

We affirm the judgment of the trial court.